## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>**PSL-NORTH AMERICA LLC, et al.**[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 14-11477 (PJW)<br><br>(Joint Administration Requested)<br><br>**Docket Ref. No. 8** |

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION SECURED FINANCING PURSUANT TO 11 U.S.C. § 364, (II) AUTHORIZING THE DEBTORS' LIMITED USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED LENDERS PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364, AND (IV) SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001

Upon the motion of the debtors and debtors-in-possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), dated June 16, 2014 (the "**Motion**"), (a) seeking the entry of this interim order (this "**Order**") and a final order (the "**Final Order**"): (i) authorizing PSL-North America LLC ("**PSL**" and, in such capacity as post-petition borrower, the "**Borrower**") to obtain senior secured post-petition financing in an aggregate principal amount not to exceed the Maximum Amount (as defined below) (the "**Postpetition Facility**"), pursuant to section 364 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**"), and authorizing PSL USA Inc. ("**PSL USA**" or the "**Parent**") and each of the Debtors' non-Debtor subsidiaries (collectively, with PSL USA, the "**Guarantors**") to unconditionally guaranty the Borrower's obligations under the Postpetition Facility, from ICICI Bank Limited, New York Branch or its designee (in its

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: PSL-North America LLC (5196) and PSL USA, Inc. (0971). The above-captioned Debtors' mailing address is 13092 Sea Plane Road, Bay St. Louis, MS 39520.

individual capacity, "**ICICI Bank**"), as post-petition lender (the "**Postpetition Lender**"), pursuant to the terms of this Order, which incorporates by reference certain provisions of that certain Asset Purchase Agreement, dated as of June 16, 2014, by and among each of the Debtors and Jindal Tubular USA LLC, a Delaware limited liability company, in substantially the form attached hereto as **Exhibit B** (as the same may be amended, restated, supplemented or otherwise modified from time to time, the "**Stalking Horse APA**"); (ii) authorizing the Debtors to execute, deliver and enter into the Postpetition Facility and to perform such other and further acts as may be required in connection with the Postpetition Facility; (iii) as set forth in more detail below, granting certain security interests, liens, and superpriority claims (including a superpriority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code, liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code, and priming liens pursuant to section 364(d) of the Bankruptcy Code) to the Postpetition Lender to secure all obligations of the Debtors under and with respect to the Postpetition Facility; (iv) authorizing the Debtors' limited use of Cash Collateral (as defined in paragraph E below), solely on the terms and conditions set forth in this Order; (v) granting adequate protection to the Prepetition Senior Lender (as defined in paragraph D.(a).1. below), whose liens and security interests are being primed by the Postpetition Facility, as more fully set forth in this Order; and (vi) modifying the automatic stay imposed under section 362 of the Bankruptcy Code; (b) requesting, pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the applicable Local Bankruptcy Rules of this Court, that an emergency interim hearing (the "**Interim Hearing**") on the Motion be held before this Court to consider entry of this Order, which authorizes the Debtors to borrow or guarantee, as applicable, the Postpetition Facility, on an interim basis, up to an aggregate principal amount not to exceed $5,500,000; and (c) requesting, pursuant to

-2-

Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the applicable Local Bankruptcy Rules of this Court, that this Court (i) schedule a final hearing (the "**Final Hearing**") on the Motion as set forth in paragraph 33 below to consider entry of the Final Order authorizing the balance of the borrowings and guarantees, as applicable, on a final basis, and (ii) approve notice procedures with respect thereto; and the Interim Hearing having been held before this Court on June [___], 2014; and this Court having considered the Motion and all pleadings related thereto, including the record made by the Debtors at the Interim Hearing; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

### THIS COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:[2]

A.    <u>Commencement of Cases</u>.  On June 16, 2014 (the "**Petition Date**"), each Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are continuing to operate their respective businesses and manage their respective properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner, and no creditors' committee (the "**Creditors' Committee**") has yet been appointed in the Chapter 11 Cases.

B.    <u>Jurisdiction; Venue</u>.  This Court has jurisdiction over the Chapter 11 Cases and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure.  Venue of the Chapter 11 Cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2]    Pursuant to Bankruptcy Rule 7052, any findings of fact contained herein that may be construed as matters of law shall be treated as conclusions of law as if set forth below, and vice versa.

C.   Adequate Notice.   On June 16, 2014, the Debtors filed the Motion with this Court and pursuant to Bankruptcy Rules 2002, 4001 and 9014, and the Local Bankruptcy Rules of this Court, the Debtors have provided notice of the Motion and the Interim Hearing by electronic mail, facsimile, hand delivery or overnight delivery to the following parties and/or to their counsel as indicated: (i) the Office of the United States Trustee for this District (the "**U.S. Trustee**"); (ii) the Debtors' twenty (20) largest unsecured creditors on a consolidated basis; (iii) counsel to the Postpetition Lender; (iv) counsel to the Prepetition Senior Lender (as defined in paragraph D.(a).1. below); (v) counsel to Standard Chartered Bank, Dubai International Financial Centre Branch, Regulated by the Dubai Financial Services Authority, as prepetition lender thereunder ("**SCB**"); (vi) counsel to the MBFC (as defined in paragraph D.(a).8 below); (vii) all other known parties with liens of record on assets of the Debtors as of the Petition Date; (viii) all financial institutions at which the Debtors maintain deposit accounts; (ix) the local office for the Internal Revenue Service; (x) Hancock Bank, indenture trustee under that certain trust indenture agreement; and (xi) all other parties required to receive notice pursuant to Bankruptcy Rules 2002, 4001 or 9014 or requesting to receive notice prior to the date hereof (collectively, the "**Notice Parties**").   Given the nature of the relief sought in the Motion, the foregoing notice was sufficient and adequate under the circumstances and complies with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law, and no further notice relating to this proceeding is necessary or required.

D.   Prepetition Loan Documents, Liens and Claims.

(a)   Without prejudice to the rights of any other party, but subject to the time limitations specified in paragraph 29 of this Order, the Debtors admit, stipulate and agree that, on and as of the Petition Date, the Debtors were indebted and bound as described below:

**Prepetition Senior Lender**

1.      Pursuant to that certain Second Amended and Restated Credit Facility Letter Agreement dated as of September 19, 2013 (as amended, restated, supplemented or otherwise modified from time to time, the "**Prepetition Letter of Credit Agreement**"), among PSL, as borrower, ICICI Bank, as prepetition lender thereunder (the "**Prepetition Senior Lender**") and PSL USA, as a guarantor thereunder, the Prepetition Senior Lender agreed to extend certain accommodations to PSL as applicant to secure certain obligations under the Bonds (defined below) issued by the Mississippi Business Finance Corporation (the "**MBFC**") on the account of PSL.  The Prepetition Letter of Credit Agreement, along with any other agreements and documents executed or delivered in connection therewith, including any remarketing agreement and reimbursement agreement, are collectively referred to herein as the "**Prepetition Senior Loan Documents**" (as the same may be amended, restated, supplemented or otherwise modified from time to time).  All obligations of the Debtors arising under the Prepetition Letter of Credit Agreement or any other Prepetition Senior Loan Document shall collectively be referred to herein as the "**Prepetition Senior Obligations**."

2.      Pursuant to the Prepetition Senior Loan Documents, PSL granted to the Prepetition Senior Lender, to secure the Prepetition Senior Obligations the following liens on the Prepetition Senior Collateral (as defined below) (the "**Prepetition Senior Liens**"), (i) a first priority security interest in and continuing lien (the "**Prepetition Senior Priority Lien**") on all of PSL's right, title and interest in parcels of real property located at the Port Bienville Industrial Park in Hancock County, Mississippi as described in that certain Leasehold Deed of Trust (as amended, modified or supplemented, the "**Deed of Trust**"), attached hereto as **Exhibit C**, together with additional assets, leaseholds and property, and proceeds, products, accessions, rents and profits thereof, in each case whether then owned or existing or thereafter acquired or arising all as more fully set forth in the Deed of Trust (collectively, the "**Real Property Assets**") and (ii) a security interest in and continuing lien on substantially all of PSL's remaining assets and property, and all proceeds, products, accessions, rents and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "**Personal Property Assets**").  All collateral granted or pledged by PSL pursuant to any Prepetition Senior Loan Document or any other Prepetition Senior Loan Document, including, without limitation, the "Collateral" as defined in the Prepetition Letter of Credit Agreement, and all prepetition and post-petition proceeds thereof shall collectively be referred to herein as the "**Prepetition Senior Collateral**".

3.      (i) All Prepetition Senior Loan Documents executed and delivered by the Debtors to the Prepetition Senior Lender are valid and enforceable by the Prepetition Senior Lender against each of the Debtors; (ii) the Prepetition Senior Liens constitute valid, binding, enforceable and perfected liens and security interests in and on the Prepetition Senior Collateral, subject only to the Prior Liens (as defined below in this paragraph) and are not subject to avoidance, reduction, disallowance, re-characterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except insofar as such liens are subordinated to the Postpetition Liens and the Carve-Out (each term as hereinafter defined) in accordance with the provisions of this Order); (iii) the Prepetition Senior Obligations constitute legal, valid and binding obligations of each of the Debtors; (iv) no offsets, defenses or counterclaims to the Prepetition Senior Obligations exist, and (v) no portion of the Prepetition

-5-

Senior Obligations, or any amounts previously paid to Prepetition Senior Lender on account of or with respect the Prepetition Senior Obligations, are subject to avoidance, reduction, disgorgement, disallowance, impairment, re-characterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

4.    The Debtors have no valid claims (as such term is defined in section 101(5) of the Bankruptcy Code) or causes of action against the Prepetition Senior Lender (or any of its officers, directors, employees, affiliates, professionals, parents, subsidiaries or predecessors) with respect to the Prepetition Letter of Credit Agreement or any other Prepetition Senior Loan Documents, or any act or omission by the Prepetition Senior Lender prior to the Petition Date, whether arising at law or at equity, including, without limitation, any re-characterization, subordination, avoidance or other debtor claims arising under or pursuant to sections 105, 510 or 542 through 553, inclusive, of the Bankruptcy Code or under applicable non-bankruptcy law.

5.    As of June 13, 2014, the Debtors were truly and justly indebted to the Prepetition Senior Lender pursuant to the Prepetition Senior Loan Documents, without defense, counterclaim or offset of any kind, in the aggregate principal of not less than $77,556,630.14 pursuant to the  Prepetition Letter of Credit Agreement (the "**Prepetition Senior Loans**"), plus all accrued and, subject to section 506(b) of the Bankruptcy Code, hereafter accruing and unpaid interest thereon and any additional fees and expenses (including any attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable or reimbursable under the Prepetition Senior Loan Documents, all of which are stipulated by the Debtors to be allowed, valid and enforceable) now or hereafter due under the Prepetition Letter of Credit Agreement and the other Prepetition Senior Loan Documents.

6.    PSL does not have any interest in any assets located outside the United States.

## SCB

7.    Pursuant to that certain Term Loan Agreement dated as of October 6, 2013 (as amended, restated, supplemented or otherwise modified from time to time, the "**SCB Credit Agreement**"), among PSL USA, as borrower, SCB, as prepetition lender thereunder, and PSL, as guarantor, SCB agreed to extend term loans in an aggregate principal amount of $30,000,000 and other accommodations to the Parent. The SCB Credit Agreement, along with any other agreements and documents executed or delivered in connection therewith, including, without limitation, the "Credit Documents" as defined therein, are collectively referred to herein as the "**SCB Loan Documents**" (as the same may be amended, restated, supplemented or otherwise modified from time to time). All obligations of the Debtors arising under the SCB Credit Agreement or any other SCB Loan Document shall collectively be referred to herein as the "**SCB Obligations**."

8.    Pursuant to the SCB Loan Documents, by and between the Parent, PSL and SCB, PSL guaranteed the obligations of the Parent and granted the following liens on the Prepetition Senior Collateral (the "**SCB Liens**") to SCB to secure the SCB Obligations (i) a second priority security interest in and continuing lien on the Real Property Assets and (ii) a first

priority security interest in and continuing lien on the Personal Property Assets (the "**SCB Priority Lien**"). SCB did not file a deed of trust or leasehold mortgage with respect to the Real Property Assets and therefore is unperfected with respect to such Real Property Assets.

## MBFC

9.    Pursuant to that certain Loan Agreement by and between Mississippi Business Finance Corporation and PSL-North America LLC dated as of November 1, 2007 (as amended from time to time, the ("**MBFC Loan Agreement**") and, collectively with any other agreements and documents executed or delivered in connection therewith, the "**MBFC Bond Documents**"), the MBFC issued those certain (i) Tax Exempt Variable Rate Demand Revenue Bonds 2007A in the aggregate principal amount of $68,000,000 and (ii) Taxable Variable Rate Demand Revenue Bonds, Series 2007B in the aggregate principal amount of $10,000,000 (collectively, the "**Bonds**"). The proceeds of the Bonds (the "**Bond Proceeds**") were loaned to the Debtor pursuant to the MBFC Bond Documents. All obligations of the Debtors arising under the MBFC Bond Documents shall collectively be referred to herein as the "**Bond Obligations**."

10.    All MBFC Bond Documents executed and delivered by PSL are valid and enforceable against the Debtors.

11.    PSL has no valid claims (as such term is defined in section 101(5) of the Bankruptcy Code) or causes of action against the MBFC or any holder of the Bonds with respect to the MBFC Bond Documents, or any act or omission by the MBFC or any holder of the Bonds prior to the Petition Date, whether arising at law or at equity, including, without limitation, any re-characterization, subordination, avoidance or other debtor claims arising under or pursuant to sections 105, 510 or 542 through 553, inclusive, of the Bankruptcy Code or under applicable non-bankruptcy law.

12.    As of June 13, 2014, PSL was truly and justly indebted to the holders of the Bonds, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $76,820,000 in respect of the Bond Obligations, plus all accrued or, subject to section 506(b) of the Bankruptcy Code, hereafter accruing and unpaid interest thereon and any additional fees and expenses (including any attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable or reimbursable under the MBFC Bond Documents) now or hereafter due under the MBFC Bond Documents.

(b)    The Debtors irrevocably waive any right to challenge or contest the

Prepetition Senior Liens, Prepetition Senior Obligations, the MBFC Bond Documents and any

Bond Obligations; provided that, subject to paragraph 28 of this Order and the time limitations

specified in paragraph 29 of this Order, none of the foregoing acknowledgments or agreements

by the Debtors contained in this paragraph D(a) and (b) shall be binding on any other party and

shall not affect the rights of any committee, Person or entity (other than the Debtors) with respect

-7-

to their rights to assert, pursue or otherwise allege any of the claims and actions described in paragraph 29 of this Order. Notwithstanding anything in this Order to the contrary, the Debtors and all other parties in interest reserve all of their respective rights (x) as to the value of the Prepetition Senior Collateral and may at any time during the Chapter 11 Cases seek and obtain a determination of this Court under section 506(a) of the Bankruptcy Code that all or any portion of the Prepetition Senior Obligations constitute unsecured deficiency claims and (y) regarding the amount, if any, of the Adequate Protection Senior Obligations (as defined below).

(c)     As used herein, the term "**Prior Liens**" means only valid, enforceable, and non-avoidable liens and security interests in the Prepetition Senior Collateral that were perfected prior to the Petition Date (or perfected on or after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code), which are not subject to avoidance, reduction, disallowance, impairment, re-characterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law and which are senior in priority to the Prepetition Senior Liens under applicable law and after giving effect to any subordination or inter-creditor agreements. The liens asserted by AM/NS Calvert, LLC are hereby deemed to be Prior Liens.

E.     Cash Collateral.  For purposes of this Order, the term "**Cash Collateral**" shall mean and include all "cash collateral" as defined by section 363(a) of the Bankruptcy Code and shall include and consist of, without limitation, all of the respective cash proceeds of the Postpetition Collateral (as defined below in paragraph 9 of this Order) and Prepetition Senior Collateral in which any of the Postpetition Lender, the Prepetition Senior Lender or SCB has an interest (including, without limitation, any adequate protection lien or security interest), whether such interest existed as of the Petition Date or arises thereafter pursuant to this Order, any other order of this Court, applicable law or otherwise.  For purposes of this Order, Cash Collateral in

-8-

which SCB holds a senior Prior Lien ("**SCB Cash Collateral**") shall not be used by the Debtors without a further order of this Court.

        F.      <u>Exigent Circumstances</u>.  The Debtors have an immediate and critical need to obtain post-petition financing under the Postpetition Facility and to use Cash Collateral in order to, among other things, finance the ordinary costs of their operations, maintain business relationships with vendors, suppliers and customers, make payroll, make capital expenditures, and satisfy other working capital and operational needs.  The Debtors' access to sufficient working capital and liquidity through the incurrence of post-petition financing under the Postpetition Facility and the use of Cash Collateral under the terms of this Order is vital to the preservation and maintenance of the going concern value of the Debtors' estates.  Consequently, without access to the Postpetition Facility and the use of Cash Collateral to the extent authorized pursuant to this Order, the Debtors and their estates would suffer immediate and irreparable harm.

        G.      <u>No Alternative Sources of Funding</u>.  The use of Cash Collateral alone would be insufficient to meet the Debtors' post-petition liquidity needs.   The Debtors have attempted but, given the Debtors' current financial condition and capital structure, are unable to obtain (i) adequate unsecured credit allowable either (a) under sections 364(b) and 503(b)(1) of the Bankruptcy Code or (b) under section 364(c)(1) of the Bankruptcy Code, (ii) adequate credit secured by (x) a senior lien on unencumbered assets of their estates under section 364(c)(2) of the Bankruptcy Code and (y) a junior lien on encumbered assets under section 364(c)(3) of the Bankruptcy Code, or (iii) secured credit under section 364(d)(1) of the Bankruptcy Code, from sources other than the Postpetition Lender on terms more favorable than the terms of the Postpetition Facility.  The only source of secured credit available to the Debtors, other than the

-9-

use of Cash Collateral, is the Postpetition Facility. The Debtors require both additional financing under the Postpetition Facility and the use of Cash Collateral under the terms of this Order in order to satisfy their post-petition liquidity needs. After considering all of their alternatives, the Debtors have concluded, in an exercise of their sound business judgment, that the financing to be provided by the Postpetition Lender pursuant to the terms of this Order represents the best financing presently available to the Debtors.

      H.     <u>Willingness of Postpetition Lender</u>. The Postpetition Lender has indicated a willingness to provide the Debtors with certain financing commitments, but solely on the terms and conditions set forth in this Order.

      I.     <u>Limited Consent</u>. The consent of the Prepetition Senior Lender to the priming of the Prepetition Senior Priority Liens by the Postpetition Liens is limited to the Postpetition Facility presently before this Court, and shall not, and shall not be deemed to, extend to any other post-petition financing or to any modified version of this Postpetition Facility with any other party. Furthermore, the consent of (i) the Prepetition Senior Lender to the Debtors' use of Cash Collateral and (ii) the Prepetition Senior Lender to the priming of the Prepetition Senior Priority Liens by the Postpetition Liens as provided in this Order does not constitute, and shall not be construed as constituting, an acknowledgment or stipulation by the Prepetition Senior Lender that its interests in the Prepetition Senior Collateral are adequately protected pursuant to this Order or otherwise. Nothing in this Order, including, without limitation, any of the provisions herein with respect to adequate protection, shall constitute, or be deemed to constitute, a finding that the interests of the Prepetition Senior Lender are or will be adequately protected with respect to any non-consensual use of Cash Collateral or non-consensual priming of the Prepetition Senior Liens.

-10-

J.    Section 364(d) Finding.  The security interests and liens granted pursuant to this Order to the Postpetition Lender are appropriate under section 364(d) of the Bankruptcy Code because, among other things: (i) such security interests and liens do not impair the interests of any holder of a valid, perfected, prepetition security interest or lien in any property of the Debtors' estates, and/or (ii) the holders of such security interests and liens have consented (or are deemed to have consented) to the security interests and priming liens granted pursuant to this Order to the Postpetition Lender.

K.    [Reserved].

L.    Good Cause Shown.  Good cause has been shown for immediate entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) and such relief is in the best interest of the Debtors, their estates and creditors.  In particular, the authorizations granted herein for the Debtors to use the Cash Collateral, and to obtain interim financing, including on a priming lien basis, are necessary to avoid immediate and irreparable harm to the Debtors and their estates, are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

M.    Section 364(e); Good Faith.  The Postpetition Facility use of Cash Collateral, and provision of adequate protection contained herein have been negotiated in good faith and at arm's-length among the Debtors, the Postpetition Lender, and the Prepetition Senior Lender.  Accordingly, any credit extended and loans made to, Cash Collateral used by, and adequate protection provided by the Debtors pursuant to this Order shall be, and hereby is, deemed to have been extended, issued, made, used or provided, as the case may be, in "good faith" as required by, and within the meaning of, section 364(e) of the Bankruptcy Code.

-11-

N.    Budget for Postpetition Financing.    Attached hereto as Exhibit A is a budget that assumes a going concern sale of the Debtors' assets in accordance with the Stalking Horse APA setting forth all projected cash receipts, sales and cash disbursements (by line item) on a weekly basis for the time period from and including June 15, 2014 to September 21, 2014 (the "**Initial Approved Budget**").    The Initial Approved Budget may be modified or supplemented from time to time by additional budgets (covering any time period covered by a prior budget or covering additional time periods) prepared by the Debtors and approved by the Postpetition Lender in writing in its sole discretion, without subsequent notice to or order of the Court (each such additional budget, a "**Supplemental Approved Budget**"); provided, however, that notice of any material changes to the Initial Approved Budget or any Supplemental Approved Budget shall be governed by the provisions of Paragraph 3, below.    The aggregate, without duplication, of all items approved by the Postpetition Lender in the Initial Approved Budget and any and all Supplemental Approved Budgets shall constitute an "**Approved Budget**."    The Initial Approved Budget is an integral part of this Order and has been relied upon by the Postpetition Lender in deciding to agree to this Order and provide the Postpetition Facility and the Prepetition Senior Lender to permit use of Cash Collateral.    The Debtors represent and warrant to the Postpetition Lender and this Court that (i) the Initial Approved Budget includes and contains the Debtors' best estimate of all operational disbursements, fees, costs and other expenses that will be payable, incurred and/or accrued by any of the Debtors during the period covered by the Initial Approved Budget and that such operational disbursements, fees, costs and other expenses will be timely paid in the ordinary course of business unless such operational disbursements, fees, costs and other expenses are not incurred or otherwise payable, and (ii) the

-12-

amounts in the Initial Approved Budget are in the Debtors' best estimate and judgment sufficient to proceed with a prompt, proper and orderly sale of the Debtors' assets.

Based upon the foregoing findings, stipulations, and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor,

## IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.      <u>Motion Granted</u>.  The Motion is approved on an interim basis on the terms and conditions set forth in this Order.  This Order shall become effective immediately upon its entry.  All objections to the entry of this Order have been withdrawn or overruled.

2.      <u>Postpetition Facility Approved</u>.    The terms and conditions of the Postpetition Facility are hereby approved pursuant to this Order.  The Borrower is hereby authorized to borrow money under the Postpetition Facility, in accordance with the terms of this Order, in accordance with the terms of this Order.  The Guarantors are hereby authorized to unconditionally guaranty the Borrower's obligations under the Postpetition Facility, and shall be liable as a primary obligor for the payment, and not collection, of all obligations under the Postpetition Facility. The Postpetition Lender may from time to time impose reserves against the amounts available to be borrowed under the Postpetition Facility as Postpetition Lender deems necessary or appropriate in accordance with its reasonable credit judgment, including, without limitation, a reserve for the Carve-Out (as defined in <u>paragraph 13</u> below); provided, <u>however</u>, that notice of any reserve other than the Carve-Out shall be provided to counsel to the Creditors' Committee (and any subsequent trustee of the Debtors' estates) and counsel to the U.S. Trustee, each of whom shall have five (5) days from the date of such notice within which to object in writing to such reserve. If the Creditors' Committee (or any subsequent trustee of the Debtors'

estates) or the U.S. Trustee timely objects to any such reserve, then such reserve shall only be permitted pursuant to an order of this Court.

        3.     Amendments. The Debtors are hereby authorized, without further notice, motion or application to, order of, or hearing before, this Court, to enter into agreements with the Postpetition Lender providing for any non-material modifications to the Approved Budget (as defined in paragraph N above); provided, however, that notice of any material modification or amendment to the Approved Budget shall be provided to counsel to the Creditors' Committee (and any subsequent trustee of the Debtors' estates) and counsel to the U.S. Trustee, each of whom shall have five (5) days from the date of such notice within which to object in writing to such modification or amendment, and shall be ~~approved by~~ filed with the Court. If the Creditors' Committee (or any subsequent trustee of the Debtors' estates) or the U.S. Trustee timely objects to any material modification or amendment to the Approved Budget, then such modification or amendment shall only be permitted pursuant to an order of this Court.

        4.     Permitted Use.

        a.     Generally. Notwithstanding anything in this Order to the contrary, the Debtors may use the Cash Collateral and proceeds of the Postpetition Facility, obtain and incur Postpetition Obligations solely for general operating expenses, including payment of professional fees and capital expenditures in accordance with and pursuant to the financial covenants, availability formulae, and other terms and conditions set forth in this Order, including, without limitation, pursuant to and limited by the terms of the Approved Budget, in all events only until the occurrence of the Termination Date (as defined in paragraph 34 below). Notwithstanding the foregoing, but subject to the Maximum Amount (as defined in paragraph 7 below), if the Postpetition Lender in its sole discretion advances funds or provides other

-14-

extensions of credit to the Debtors notwithstanding the financial covenants, availability formulae, or other terms or conditions set forth in this Order, including, without limitation, pursuant to the Approved Budget, such advances and other extensions of credit shall constitute Postpetition Obligations entitled to the rights, priorities, benefits and protections of the Postpetition Facility under this Order. The Debtors shall not have the right to direct the manner of application of any payments to the Postpetition Lender or any other receipts by the Postpetition Lender of proceeds of any of the Postpetition Collateral.

b.    Notwithstanding anything herein to the contrary, no proceeds of the Postpetition Facility or Cash Collateral (including any prepetition retainer funded), or any portion of the Carve-Out may be used by any of the Debtors, any Committee, or any trustee or other estate representative appointed in the Chapter 11 Cases, or any other person, party or entity to (or to pay any professional fees and disbursements incurred in connection therewith) (a) request authorization to obtain post-petition loans or other financial accommodations pursuant to Bankruptcy Code section 364(c) or (d), or otherwise, other than from the Postpetition Lender; (b) investigate (except as set forth below), assert, join, commence, support or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests of, in any capacity, the Postpetition Lender or the Prepetition Senior Lender and their respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, action or other matter (including formal discovery proceedings in anticipation thereof), including, without limitation, (i) any claims and defenses, any Avoidance Actions (as defined below) or other actions arising under chapter 5 or section 724(a) of the Bankruptcy Code; (ii) any so-called "lender liability" claims and causes of

-15-

action; (iii) any action with respect to the validity, enforceability, priority and extent of the Postpetition Obligations and/or the Prepetition Senior Obligations, or the validity, extent, and priority of the Postpetiton Liens, the Prepetition Senior Liens, or the Adequate Protection Senior Liens (or the value of any of the Postpetition Collateral); (iv) any action seeking to invalidate, set aside, avoid or subordinate, in whole or in part, the Postpetition Liens, the Prepetition Senior Liens, the Adequate Protection Senior Liens or the other Adequate Protection Senior Claims; (v) except as permitted in Paragraph 14(a), any action seeking, or having the effect of, preventing, hindering or otherwise delaying any or all of the Postpetition Lender's assertion, enforcement or realization on the Cash Collateral or the Postpetition Collateral or this Order; and/or (vi) any action seeking to modify any of the rights, remedies, priorities, privileges, protections and benefits granted to any or all of the Postpetition Lender, the Prepetition Senior Lender hereunder or under documents evidencing the Prepetition Senior Obligations.

c.      Any SCB Cash Collateral shall be collected by the Debtors and segregated in a separate bank account at The First, A National Banking Association (the "**SCB Cash Collateral Account**"). The funds in the SCB Cash Collateral Account shall not be used by the Debtors absent further order of this Court.

d.      Cash Receipts; Use of Proceeds and Cash Collateral; Reporting; Monitoring; Books and Records; Certain Business Related Covenants.

(1)      Cash Receipts. The Debtors' actual cash receipts during any week covered by the Initial Approved Budget shall not be less than 90% of the amount set forth in the Approved Budget in effect for such week; provided that to the extent the actual amount of cash receipts of the Debtors during any week covered by the Approved Budget exceeds 100% of the amounts set forth in the Approved Budget for such week, the Debtors shall be permitted, to the extent that this paragraph 4.c.(1) would otherwise be violated during any following week or weeks of the Approved Budget following such week, to deem such excess cash receipts to have been received during any of such week or weeks without duplication. All of the Debtors' cash receipts shall be deposited into the following account held by the Postpetition

Lender (Account No. 840000001387 in the name of PSL) and shall be held or disbursed from that account pursuant to the terms of this Order.

(2)     Cash Expenditures.  Subject to the terms and conditions set forth below, and except as the Postpetition Lender otherwise consents in writing, funds borrowed hereunder and Cash Collateral shall be used by the Debtors solely for the purposes and up to the amounts set forth in the Approved Budget for the applicable line item during the applicable seven-day period:

(a)     For each period beginning on the Petition Date and ending on the last day of each seven-day period set forth in the Approved Budget, the aggregate cumulative expenditures by the Debtors shall not exceed one hundred and ten percent (110%) of the aggregate cumulative amount budgeted for such cumulative time period pursuant to the Approved Budget.

(b)     The Debtors' expenditures under any line item for any seven-day period shall not exceed the greater of (i) the sum of the budgeted amount for such line item for such seven-day period plus any excess of the cumulative amounts budgeted for such line item during the periods elapsed since the Petition Date over the cumulative amount of Debtors' actual expenditures under such line item for such prior time period and (ii) one hundred and ten percent (110%) of the budgeted amount for such line item for such seven-day period.

(c)     To the extent any additional line item is added to the Approved Budget in accordance with the provisions of this Order, such line items shall be subject to such variance provisions as the Debtors and Postpetition Lender may mutually agree in writing in their respective sole discretion.

(d)     Any unused portion of any line item in the Approved Budget may be carried forward (but not carried backward) to the same line item for any subsequent seven-day period in the Approved Budget.

(3)     Aggregate   Variance;   Payments   Under   Budget. Notwithstanding the expenditure variances permitted by subparagraphs (a) through (d) above, the aggregate cumulative expenditures by the Debtors shall not exceed one hundred percent (100%) of the aggregate amount budgeted for the entire period covered by the Initial Approved Budget (provided that nothing herein shall be deemed to require the Postpetition Lender to advance funds in excess of the Maximum Amount under the Postpetition Facility or this Order).  The Debtors shall use their best efforts to minimize the prepayment of any expense listed in the Approved Budget and shall make such prepayments only to the extent required by their vendors. The proceeds of any loans or any extensions of credit made by the Postpetition Lender to the Debtors pursuant to this Order and all proceeds of the Postpetition Collateral and Cash Collateral shall be used only as follows:  (i) prior to the Termination Date, solely for the payment of the expenses set forth in the Approved Budget (subject to the limitations and exceptions set forth in this paragraph), including, without limitation, any incurred and/or accrued fees and expenses of the Retained Professionals set forth in the Approved Budget (to the extent permitted by order of the Court); and (ii) on or after the Termination Date, first, for the payment of any amounts constituting any part of the Carve-Out (as defined below) up to an aggregate amount not to

-17-

exceed the unused portion of the Carve-Out, <u>second</u>, for the payment of the Postpetition Obligations, and <u>third</u>, for payment of any actually incurred but unpaid expenses under the Approved Budget existing as of the Termination Date.

(4)     <u>Delivery of Weekly Variance Reports</u>. The Debtors shall, on each Thursday (or if such Thursday is not a business day, the following business day) following the date any part of the Postpetition Facility is funded to the Debtors, deliver to the Postpetition Lender (i) a report showing actual cash receipts, actual operating disbursements, actual payroll disbursements, actual non-operating disbursements for each line item in the Approved Budget covering the previous week, actual beginning and ending cash balances for such week and comparing the foregoing amounts with the respective budgeted amounts set forth in the Approved Budget for such line item during such week, and (ii) a certificate of a "Responsible Officer" of the Debtors in form and substance satisfactory to the Postpetition Lender certifying that the Debtors are in compliance with the requirements of the Approved Budget, this Order, and that no budget default or Event of Default (as defined in paragraph 34 below, has occurred or is continuing. For purposes of this Order, a responsible officer shall be PSL's Chief Executive Officer, Chief Financial officer or other officer or director acceptable to the Postpetition Lender in the sole discretion of the Postpetition Lender.

(5)     <u>Delivery of Other Reports</u>. The Debtors shall deliver to the Postpetition Lender:

(a)     <u>90 Day Reports</u>. Within 90 days of each draw on the Postpetition Facility the Debtors shall provide a certification from an independent agency reasonably acceptable to the Postpetition Lender that details how the Debtors used the proceeds of such draw. The form of certification is attached hereto as Exhibit F; D

(b)     <u>Sale Update Reports</u>. On each Thursday (or if such Thursday is not a business day, the following business day) following the Petition Date, an updated written report on the Debtors' sale efforts (including, without limitation, a list of all contacts with potential buyers, a description of any indications of interest and copies of any written offers or indications of interest). The Debtors shall also make available their respective officers, directors and advisors to the Postpetition Lender to discuss any and all aspects of the sale process, including the report described herein;

(c)     <u>Weekly Cash Flow Projections</u>.     (i) On each Thursday (or if such Thursday is not a business day, the following business day) following the date any part of the Postpetition Facility is funded to the Borrower, an updated statement of sources and uses of cash of the Debtors for the 13 weeks (the "**Weekly Cash Flow Projection**"), which shall include the week during which the Weekly Cash Flow Projection is delivered to the Postpetition Lender and reflect the Debtors' good faith projection of all cash receipts and disbursements in connection with the operation of its business for such 13-week period and (ii) no later than noon on every fourth Thursday (commencing on the day immediately following the last day of the Approved Budget then in effect), a proposed budget for the immediately succeeding four-week period, in a form and substance reasonably acceptable to the Postpetition Lenders and the lead counsel to the Creditors' Committee (each, a "**Proposed Budget**"). The Proposed Budget shall also be delivered to the Prepetition Senior Lender; <u>provided</u> that unless

-18-

and until the Postpetition Lender and the Prepetition Senior Lender have approved of such Proposed Budget, the Debtors shall still be subject to and be governed by the terms of the Approved Budget and the Postpetition Lender shall not have any obligation to make any further disbursements pursuant to any Proposed Budget not constituting the Approved Budget. The Postpetition Lender shall have two (2) business days following receipt of each Proposed Budget to approve or reject such Proposed Budget upon written notice to the Debtors; provided that any portion of a Proposed Budget that relates to periods covered by a previously approved Proposed Budget shall automatically be deemed approved to the extent that no changes have been made to the Proposed Budget for such periods; provided, further, that, for the avoidance of doubt, the Borrower and the Postpetition Lender may nonetheless mutually agree to modify line items in a Proposed Budget for weeks that have been previously approved by the Postpetition Lender. Upon receipt of a notice of rejection, the Debtors shall, within 24 hours of receipt of such notice, engage in good faith negotiations with the Postpetition Lender in order to develop a Proposed Budget that is acceptable to the Postpetition Lender in its sole discretion (such revised Proposed Budget to be submitted within two (2) business days of the Debtors' receipt of a notice of rejection);

(d)     Insurance.  On the first business day of each month following the date hereof, the Debtors shall deliver, in form and substance satisfactory to the Postpetition Lender and certified as complete and correct by a Responsible Officer of the Debtors, a summary of all material insurance coverage maintained as of the date thereof by the Debtors, together with such other related documents and information as the Postpetition Lender may reasonably require; provided that, in lieu of such summary, a Responsible Officer of the Debtors may certify that there have been no changes since the Petition Date or the end of the previous fiscal month, as applicable;

(e)     Cases.     Copies  of  all  pleadings,  motions, applications and judicial information filed by or on behalf of the Debtors with the Court or provided by or to the U.S. Trustee (or any monitor or receiver, if any, appointed in any Chapter 11 Case) or the Creditors' Committee, at the time such document is filed with the Court, or provided by or, to the U.S. Trustee (or any monitor, examiner or receiver, if any, appointed in any Chapter 11 Case) or the Creditors' Committee;

(f)     Other Information.  With reasonable promptness, such other information and data with respect to the Debtors as from time to time may be reasonably requested by the Postpetition Lender;

(g)     Notice of Default.  Promptly upon any officer of the Debtors obtaining knowledge of any of the following events or conditions, copies of all notices given or received by such Debtor or any Guarantor with respect to any such event or condition and a certificate of the Debtors' or the Guarantors' responsible officer specifying the nature and period of existence of such event or condition and what action or actions such Debtor or Guarantor has taken, is taking and proposes to take with respect thereto:  (1) any condition or event that constitutes, or which could reasonably be expected to result in the occurrence of, the Termination Date; (2) any event or condition that could reasonably be expected to result in any material adverse effect on the Debtors or the Guarantors; or (3) any material default or event of default with respect to any indebtedness or other obligations of the Debtors or the Guarantors;

-19-

(h)    <u>Information Regarding Collateral</u>.  Prompt written notice of any change in any of the Debtors' or the Guarantors' (1) corporate name, (2) identity or corporate structure, (3) jurisdiction of organization, (4) place of business, chief executive office or domicile, or (5) Federal Taxpayer Identification Number or state organizational identification number.  The Debtors and the Guarantors agree not to effect or permit any change referred to in the preceding sentence unless all filings have been made under the Uniform Commercial Code or otherwise that are required in order for Postpetition Lender to continue at all times following such change to have a valid, legal and perfected security interest in all the Collateral as contemplated in this Order and any Final Order.  The Debtors also agree promptly to notify the Postpetition Lender if any material portion of the Collateral is damaged or destroyed;

(i)    <u>Notice Regarding Material Contracts</u>.    With reasonable promptness, written notice after any material contract of the Debtors or the Guarantors is terminated (except, with respect to any material contract, at the scheduled completion of the term of such material contract) or amended in a manner that is materially adverse to the Debtors or the Guarantors, taken as a whole.  For purposes of this subparagraph, the term "material" means any contract under which a Debtor is entitled to receive, cash, goods or services of a value in excess of $25,000 or where a Debtor is obligated to pay cash or deliver goods or services of a value in excess of $25,000; and

(j)    <u>Notice of Litigation</u>.  Promptly upon any officer of the Debtors obtaining knowledge of (1) the institution of or continuation of any action, charge, claim, demand, suit, proceeding, petition, governmental investigation, tax audit or arbitration now pending or, to the best knowledge of the Debtors, threatened against or affecting any of the Debtors or the Guarantors or any property of the Debtors or the Guarantors (collectively or individually, "**Litigation**") not previously disclosed by the Debtors to the Postpetition Lender or (2) any material development in any Litigation at any time pending against or affecting any of the Debtors or the Guarantors or any property of the Debtors or the Guarantors which, in each case, could reasonably be expected to have a material adverse effect written notice thereof to the Postpetition Lender together with such other information as may be reasonably available to the Debtors to enable the Postpetition Lender and its counsel to evaluate such matter.

(6)    <u>Monitoring</u>.  The Postpetition Lender may assume that the Debtors will comply with the terms and conditions of this Order, including, without limitation, the Approved Budget and the Postpetition Lender shall have no duty to monitor or ensure such compliance.  The Postpetition Lender shall not be obligated to pay (directly or indirectly from the Postpetition Facility or Postpetition Collateral) any unpaid expenses of the Debtors, whether or not incurred or authorized to be incurred pursuant to the Approved Budget.  The Debtors acknowledge and agree that the line items in the Approved Budget for payment of interest, expenses and other amounts to the Postpetition Lender are estimates only, and that they remain obligated to pay any and all Postpetition Obligations in accordance with the terms of this Order.

(7)    <u>Books and Records; Management Rights</u>.  Each of the Debtors shall keep adequate books and records with respect to its business activities in which proper entries, reflecting all financial transactions, are made in accordance with GAAP and on a basis consistent with the financial statements previously delivered to the Postpetition Lender.  Each of the Debtors shall permit any representative that the Postpetition Lender authorizes,

including its attorneys and accountants, to inspect the Postpetition Collateral and examine and make copies and abstracts of the books of account and records of the Debtors at reasonable times, upon reasonable notice during normal business hours and as often as requested. In addition, any such representative shall have the right to meet with management and officers of the Debtors to discuss such books of account and records. In addition, the Postpetition Lender shall be entitled at reasonable times and intervals to consult with and advise the management, officers and professionals of the Debtors concerning significant business issues affecting the Debtors. Such consultations shall not unreasonably interfere with the Debtors' business operations and may occur as often as requested. Any advice, recommendations or participation by the Postpetition Lender with respect to any business issues shall not be deemed to give the Postpetition Lender, nor be deemed an exercise by the Postpetition Lender of, control over the Debtors' management or policies.

(8)     New Subsidiaries; Guarantors.    The Debtors shall not create any direct or indirect subsidiary without the consent of the Postpetition Lender, such consent to be granted or withheld in the Postpetition Lender's sole discretion. To the extent any such subsidiary is created, it shall be deemed a guarantor of the Postpetition Facility and Postpetition Obligations.

(9)     Chief Restructuring Officer.    At the request of the Postpetition Lender, the Debtors shall appoint a chief restructuring officer or other person or entity reasonably acceptable to the Postpetition Lender to assist in connection with the operations of the Debtors.

e.     Additional Affirmative Covenants.

(1)     Maintenance of Corporate Existence.    The Debtors shall (a) preserve and maintain their legal existence, except in the consummation of transactions expressly permitted by the Postpetition Lender, and (b) preserve and maintain their rights (charter and statutory), privileges, franchises and permits necessary or desirable in the conduct of its business, except, in the case of this clause (b), where the failure to do so could not, in the aggregate, reasonably be expected to have a material adverse effect.

(2)     Compliance with Laws, Etc.    The Debtors shall comply with all applicable requirements of law, contractual obligations and permits, except for such failures to comply that could not, in the aggregate, reasonably be expected to have a material adverse effect.

(3)     Payment of Obligations.    The Debtors shall pay or discharge before they become delinquent (a) all material post-petition claims, taxes, assessments, charges and levies imposed by any governmental authority on a date following the Petition Date, (b) all other lawful claims that if unpaid would, by the operation of applicable requirements of law, become a lien upon any property of the Debtors that is senior in priority to any lien held by the Prepetition Senior Lender, the Postpetition Lender or SCB, except, in each case, for those whose amount or validity is being contested in good faith by proper proceedings diligently conducted and for which adequate reserves are maintained on the books of the Debtors in accordance with GAAP and (c) all obligations set forth for payment in the Approved Budget.

-21-

(4)    <u>Maintenance of Property</u>. The Debtors shall maintain and preserve (a) in good working order and condition all of its property necessary in the conduct of its business and (b) all rights, permits, licenses, approvals and privileges necessary, used or useful, whether because of their ownership, lease, sublease or other operation or occupation of property or other conduct of their business, and shall make all necessary or appropriate filings with, and give all required notices to, government authorities, except for such failures to maintain and preserve the items set forth in <u>clauses (a)</u> and <u>(b)</u> above that could not, in the aggregate, reasonably be expected to have a material adverse effect.

(5)    <u>Maintenance of Insurance</u>.    The Debtors shall (A)(i) maintain or cause to be maintained in full force and effect all policies of insurance of any kind with respect to the property and businesses of the Debtors (including policies of life, fire, theft, product liability, public liability, property damage, other casualty, employee fidelity, workers' compensation, business interruption and employee health and welfare insurance) with financially sound and reputable insurance companies or associations (in each case that are not affiliates of the Debtors) of a nature and providing such coverage as is sufficient and as is customarily carried by businesses of the size and character of the business of the Debtors, (ii) cause all such insurance relating to any property or business of the Debtors to name the Postpetition Lender as additional insured and loss payee and to provide that no cancellation, material addition in amount or material change in coverage shall be effective until after 30 days' notice thereof to the Postpetition Lender, and (iii) deliver certificates of insurance evidencing compliance herewith; and (B) until all Postpetition Obligations are indefeasibly paid and satisfied in full in cash and all commitments to lend under the Postpetition Facility shall have been terminated, the Postpetition Lender shall have the exclusive right to adjust settlement for any losses covered by an insurance policy covering the Postpetition Collateral, and to approve an award granted in a condemnation or similar proceeding (or a deed in lieu of condemnation) affecting the Postpetition Collateral, and all proceeds of such policy, award, or deed will be applied in accordance the priorities described herein.

(7)    <u>Capital Expenditures</u>. The Debtors shall fund the capital expenditures in the amount and on the timeline set forth in the Budget, or as otherwise agreed to by the Postpetition Lender in its sole discretion.

(8)    <u>Operation of Business</u>.    The Debtors shall continue to operate in the ordinary course of business, consistent with and subject to the terms of this Order and the Budget. The Debtors shall not enter into or terminate any new contract or lease that will or will reasonably be anticipated to have an negative impact on the Debtors' projected cash flows under the Budget or the willingness of the Purchaser (as defined in the Stalking Horse APA) to perform under the Stalking Horse APA. Notwithstanding the foregoing, with respect to the Water Pipeline Project, the Debtors shall not enter into any contract or lease (including any purchase orders) without the express written consent of the Postpetition Lender, which may be granted or withheld in the Postpetition Lender's sole discretion.

(9)    Compliance with Milestones.  The Debtors shall comply with the following milestones (the "Milestones"):

(a)    On or before the date that is one business day after the Petition Date, the Debtors shall file and properly serve the Bidding Procedures and Sale Motion (as defined in paragraph 15 below) requesting authority to sell the Debtors' assets in accordance with the Stalking Horse APA.

(b)    On or before the date that is one business day following the expiration of twenty-five (25) calendar days after the Petition Date or such later date to which the Postpetition Lender consents in writing in its sole discretion, the Court shall have held a hearing on the Bidding Procedures and Sale Motion.

(c)    On or before the date that is twenty-five (25) days after the Petition Date, or such later date to which the Postpetition Lender consents in writing in its sole discretion, the Court shall have entered an order in a form satisfactory to the Postpetition Lender approving the Bidding Procedures and Sale Motion (the "**Sale Procedures Order**").

(d)    On or before the date that is eighty-five (85) days after the Petition Date, or such later date to which the Postpetition Lender consents in writing in its sole discretion, the Debtors shall have held an auction (the "**Auction**") in accordance with the provisions set forth in the Sale Procedures Order.

(e)    On or before the date that is eighty-five (85) days after the Petition Date, or such later date to which the Postpetition Lender consents in writing in its sole discretion, the Court shall have entered an order (the "**363 Order**") approving a sale of all or substantially all of the Debtors' assets in accordance with section 363 of the Bankruptcy Code, the results of the Auction and the winning bid received at the Auction (the "**363 Sale**").

(f)    On or before August 31, 2014 or such later date to which the Postpetition Lender consents in writing in its sole discretion, the Debtors shall have consummated the 363 Sale.

Nothing herein shall limit the right of any party to object to the Sale Procedures Motion or to any motion for approval of the 363 Sale, including, without limitation, any objection concerning the sale process timeline set forth in the Sale Procedures Motion.  The Postpetition Lender shall have the right, in its sole discretion, to waive or extend any of the Milestones.

(10)    Opposition to Motions.  The Debtors shall promptly and diligently oppose all motions filed by persons in the Court to lift the stay on the Prepetition Senior Collateral or Postpetition Collateral (other than motions filed by the Postpetition Lender relating to the Postpetition Facility or the Prepetition Senior Lender relating to the Prepetition Senior Loans), all motions filed by persons in the Court to terminate the exclusive ability of the Debtors to file a plan of reorganization, and all other motions filed by persons in the Court that, if granted, could reasonably be expected to cause a default under this Order or have a material adverse effect on the Postpetition Lender or any Prepetition Senior Collateral or Postpetition Collateral.

RLF1 10412586v.1

(11)   <u>Cooperation</u>.  The Debtors agree to, and agree to cause any affiliates providing services to the Debtors, which, for the avoidance of doubt shall include PSL Ltd., and the representatives and advisors of each of the foregoing to, cooperate in good faith, and not interfere with the Debtors, the Postpetition Lender or the Prepetition Senior Lender and each of their respective representatives and advisors, to effectuate the transactions contemplated by the Interim Order or Final Order, as applicable, including cooperating in good faith with respect to the 363 Sale process (including the consummation of a 363 Sale), any actual or potential credit bid by the Prepetition Senior Lender, the consummation of the 363 Sale and the engagement and retention of the Debtors' Professionals (as defined below).  As promptly as practicable after any request by the Postpetition Lender or the Debtors' Professionals, the Debtors shall provide, and shall cause its affiliates providing services to the Debtors and the representatives and advisors of each of the foregoing to provide, such additional information, reports, consultant's reports (including environmental reports), diligence materials, any valuation, financial and operational data (including customer specific information) and other documents and information as may be reasonably necessary or desirable in connection with any proposed credit bid by the Prepetition Senior Lender or the Postpetition Lender.

(12)   <u>Restructuring Advisors</u>.  The Debtors shall continue to retain Duff & Phelps Corporation ("**Duff & Phelps**") and Richards, Layton & Finger, PA as restructuring advisers or retain such other advisor reasonably acceptable to the Postpetition Lender and on terms and conditions satisfactory to the Postpetition Lender.

(13)   <u>Mandatory Prepayments</u>.  The Debtors shall pay down the Postpetition Facility promptly upon the Debtors' receipt of any cash or cash equivalents outside the ordinary course of business including, without limitation, in the case of any sale, including the 363 Sale, of an asset that constitutes Collateral, tax refunds, insurance proceeds or equity issuance.  No premium, penalty or break-fee shall be applicable in connection with such prepayments.

(14)   <u>Further Assurances</u>.  At any time or from time to time upon the request of the Postpetition Lender, at the expense of the Debtors, promptly execute, acknowledge and deliver such further documents and do such other acts and things as the Postpetition Lender may reasonably request in order to effect fully the purposes of the Order or to more fully perfect or renew the rights of the Postpetition Lender with respect to the Prepetition Senior Collateral or the Postpetition Collateral.

     f.     <u>Negative Covenants</u>.

(1)   <u>Indebtedness</u>.  The Debtors shall not, and shall not permit any of their subsidiaries to, incur any indebtedness for borrowed money.

(2)   <u>Asset Sales</u>.  Other than in accordance with the Stalking Horse APA, the Debtors shall not, and shall not permit any of their subsidiaries to, sell any of their property except to the extent in the ordinary course of business.

(3)   <u>Fundamental Changes</u>.  No Debtor or Guarantor shall form or create any direct or indirect subsidiary.  No Debtor or Guarantor shall (a) merge, consolidate

-24-

or amalgamate with any Person, (b) acquire all or substantially all of the stock or stock equivalents of any Person or (c) acquire any brand or all or substantially all of the assets of any Person or all or substantially all of the assets constituting any line of business, division, branch, operating division or other unit operation of any Person, in each case except for the following: (x) the merger, consolidation or amalgamation of any subsidiary of the Borrower into any other Guarantor and (y) the merger, consolidation or amalgamation of any Guarantor for the sole purpose, and with the sole material effect, of changing its State of organization within the United States; provided, however, that in the case of any merger, consolidation or amalgamation involving the Borrower, the Borrower shall be the surviving Person.  For purposes herein, "**Person**" shall mean any individual, partnership, corporation (including a business trust and a public benefit corporation), joint stock company, estate, association, firm, enterprise, trust, limited liability company, unincorporated association, joint venture and any other entity or governmental authority.

        (4)     Change in Nature of Business.  No Debtor or Guarantor shall carry on any business, operations or activities (whether directly, through a joint venture or otherwise) substantially different from those carried on by the Debtors on the Petition Date and business, operations and activities reasonably related thereto.

        (5)     Transactions with affiliates.  No Debtor or Guarantor shall, except as otherwise expressly permitted herein, enter into any other transaction directly or indirectly with, or for the benefit of, any affiliate of the Borrower that is not a Debtor or Guarantor (including guaranty obligations with respect to any obligation of any such affiliate), except for (a) transactions in the ordinary course of business on a basis no less favorable to such Debtor or Guarantor, as applicable, as would be obtained in a comparable arm's length transaction with a Person not an affiliate of the Borrower, (b) payments permitted to be made in this Order or the Final Order, the proceeds of which, if received by Debtors, are used in accordance with the Approved Budget and (c) to the extent contemplated in the Approved Budget, reasonable salaries and other reasonable director or employee compensation and benefit arrangements (including any indemnity obligations) to officers and directors of any Debtor or Guarantor and any employment agreement (including customary benefits thereunder) that is entered into in the ordinary course of business.

        (6)     Third Party Restrictions.  No Debtor or Guarantor shall incur or otherwise suffer to exist or become effective or remain liable on or responsible for any contractual obligation limiting the ability of each Debtor or  Guarantor to perform its obligations under the Order.

        (7)     Modification of Certain Documents.   No Debtor or Guarantor shall do any of the following:

        (i)     waive or otherwise modify any term of any debt that is subordinate or junior to the Postpetition Obligations (as defined below) without the written consent of the Postpetition Lender, to be granted in its sole discretion;

        (ii)     waive or otherwise modify any term of any organizational document of, or otherwise change the capital structure of, any Debtor or Guarantor; provided

that, for the avoidance of doubt, the provisions of this paragraph 6.(ii). shall not restrict the making of any intercompany loans permitted in accordance with the terms of the Order and any Final Order.

(8)    Accounting Changes, Fiscal Year. No Debtor or Guarantor shall change its (a) accounting treatment or reporting practices, except as required by GAAP or, with respect to foreign Guarantors, any applicable law, or (b) its fiscal year or its method for determining fiscal quarters or fiscal month.

(9)    Margin Regulations. No Debtor or Guarantor shall use all or any portion of the proceeds of any credit extended hereunder to purchase or carry margin stock (within the meaning of Regulation U of the Federal Reserve Board) in contravention of Regulation U of the Federal Reserve Board.

(10)    Hazardous Materials. No Debtor or Guarantor shall cause or suffer to exist any release of any hazardous material at, to or from the Real Estate Assets that would violate any environmental law, form the basis for any environmental liabilities or otherwise adversely affect the value or marketability of any real property (whether or not owned by any Debtor or Guarantor), other than such violations, environmental liabilities and effects that would not, in the aggregate, have a material adverse effect on the business of the Debtors.

(11)    Bankruptcy Provisions. No Debtor or Guarantor shall: (a) notwithstanding the Debtors' covenants regarding the 363 Sale, file or approve a plan of reorganization or liquidation (unless such plan contains provisions providing that the Postpetition Obligations have been indefeasibly paid in full in cash on or before the effective date of such confirmed plan of reorganization or liquidation) without the consent of the Postpetition Lender and the Prepetition Senior Lender; (b) including the 363 Sale, seek or consummate a sale of assets under a plan of reorganization, section 363 of the Bankruptcy Code or otherwise unless such plan or sale provides that the Postpetition Obligations shall be indefeasibly paid in full in cash at or prior to any closing or effective date; (c) except for the Carve-Out (in an amount up to the amount set forth in this Order or the Final Order), incur administrative expense claims pari passu with or senior to the Postpetition Obligations other than as set forth herein; (d) seek or consent to any modification, stay, vacation or amendment with respect to (i) this Order or (ii) the Final Order, except in each case as agreed to by the Postpetition Lender in its sole discretion; (e) other than as set forth in this Order or the Final Order, create any lien that ranks senior to, or pari passu with, the Postpetition Liens securing the Postpetition Obligations; (f) make cash expenditures on account of claims incurred (i) by critical vendors prior to the Petition Date or (ii) pursuant to section 503(b)(9) of the Bankruptcy Code, except in each case as agreed to by the Postpetition Lender or as permitted by the Approved Budget; or (g) seek or consent to any order seeking authority to take any action prohibited by this Order or the Final Order without the consent of the Postpetition Lender to be granted in the Postpetition Lender's sole discretion.

(12)    Compliance with Budget. No Debtor shall make any cash disbursement or incur any obligation that is not specified in the Approved Budget.

-26-

5.    Postpetition Obligations.    For purposes of this Order, the term "**Postpetition Obligations**" shall mean all amounts advanced pursuant to or otherwise owing under or on account of this Order or the Postpetition Facility, and shall include the principal of, interest on (including, without limitation, interest accruing after the Maturity Date or Termination Date of the Postpetition Facility), fees, costs, expenses and other charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other fees, costs and expenses that are chargeable or reimbursable hereunder or under the Order or the Postpetition Facility ), and all other obligations and liabilities owed by the Borrower or any Guarantor to the Postpetition Lender, whether direct or indirect, absolute or contingent, due or to become due, or now existing or hereafter incurred, which may arise under, out of, or in connection with, either this Order or the Final Order, whether on account of principal, interest, reimbursement obligations, fees, indemnities, costs, expenses (including, without limitation, all fees, charges and disbursements of counsel to the Postpetition Lender that are required to be paid by the Borrower pursuant hereto).

6.    Interest, Fees, Costs and Expenses, Indemnification.

a.    The Postpetition Obligations shall bear interest at the rate of 3-month LIBOR plus 5.5 percent per annum, payable quarterly in arrears on the first day of each quarter after entry of this Order. Prior to the Termination Date and upon any Event of Default, the applicable rate shall automatically increase by one percent (1%) for non-payment defaults and two percent (2%) for any default in payment of any obligation under the Postpetition Facility without the need for application to or order of the Court. On and after the Termination Date, the applicable interest rate shall automatically increase by two percent (2%), without the need for application to or order of the Court; provided that the maximum default interest rate before or

after the Termination Date shall be two percent (2%).  Interest on amounts borrowed under the Postpetition Facility shall continue to accrue thereon from the date of the advance thereof until indefeasibly paid in full based on a year consisting of 360 days, with interest computed daily based on the actual number of days elapsed.

   b.  [Reserved]

   c.  Without limiting the definition of "Postpetition Obligations" in paragraph 5 above, the Postpetition Lender shall be entitled to, and the Postpetition Obligations shall be deemed to include, any and all fees, costs, and expenses, including the reasonable fees and expenses of the Postpetition Lender's attorneys, financial advisors, accountants and other professional advisors, incurred prepetition or post-petition in connection with the negotiation, documentation, execution, approval of, or exercise of remedies in connection with the Postpetition Facility or the Postpetition Obligations, all advances under the Postpetition Facility, and all actions taken with respect to the foregoing.  Any and all such fees, costs and expenses shall be due and payable (and promptly paid as set forth below), in each case without further notice, motion or application to, order of, or hearing before, this Court.  The Debtors shall pay as promptly as possible and in any event within five (5) days of demand (and solely with respect to such amounts incurred after the Petition Date, following expiration of the 10-day objection period described below) all such fees, costs, expenses and other charges payable under the this Order, in each case whether or not the Postpetition Facility and transactions contemplated in connection therewith are consummated.  None of such fees, costs and expenses shall be subject to Court approval or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court; provided that, solely with respect to such amounts incurred after the Petition Date, the Postpetition Lender

-28-

shall submit copies of its professional fee invoices to the Debtors, the U.S. Trustee and counsel for the Creditors' Committee (and any subsequent trustee of the Debtors' estates) in summary form reflecting the names of professionals, hourly rates, and total hours worked.  Such invoices may be redacted to the extent the Postpetition Lender deems necessary or appropriate to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine.  The U.S. Trustee and the Creditors' Committee (and any subsequent trustee of the Debtors' estates) may object to the reasonableness of the fees, costs and expenses included in any professional fee invoice submitted by the Postpetition Lender; provided that, any such objection shall be forever waived and barred unless (i) it is filed with this Court and served on counsel to the Postpetition Lender no later than ten (10) days after the objecting party's receipt of the applicable professional fee invoice and (ii) it describes with particularity the items or categories of fees, costs and expenses that are the subject of the objection and provides the specific basis for the objection to each such item or category of fees, costs and expenses.  Any hearing on an objection to payment of any fees, costs and expenses of the Postpetition Lender set forth in a professional fee invoice shall be limited to the reasonableness or necessity of the particular items of categories of the fees, costs and expenses which are the subject of such objection.  All amounts as to which no such objection is filed shall be promptly paid as set forth above.  Likewise, any and all fees, costs, and expenses, including reasonably attorneys' fees and financial advisory fees, incurred by the Prepetition Senior Lender in connection with the Prepetition Senior Loan Documents and this bankruptcy proceeding (subject to the cap set forth in paragraph 17.c. below) shall be governed by the foregoing provisions of this subparagraph.

-29-

For purposes of clarity, with respect to all accrued fees and costs of the Prepetition Senior Lender as of the Petition Date, such shall be due and payable, and paid in no more than five (5) days from notice to the Debtors, without further notice, motion or application to, order of, or hearing before, this Court.

        d.      The Debtors agree to indemnify and hold the Postpetition Lender and its officers, directors, employees, agents, attorneys, representatives and shareholders harmless from and against any and all claims, costs, expenses, damages and liabilities (including such claims, costs, expenses, damages and liabilities based on liability in tort, including strict liability in tort), including reasonable attorneys' fees and disbursements and other costs of investigation or defense (including those incurred upon any appeal), that may be instituted or asserted against or incurred by Postpetition Lender or any such person as the result of, in connection with, or related to credit having been extended, suspended or terminated under the Postpetition Facility, this Order or the administration of such credit, or in connection with, related to or arising out of the transactions contemplated hereunder and thereunder, or any actions or failures to act in connection therewith, or in connection with, related to or arising out of the disposition or utilization of the Postpetition Collateral, excluding in all cases claims to the extent resulting from the Postpetition Lender's gross negligence or willful misconduct as determined by final order of a court of competent jurisdiction. This indemnity obligation shall survive the Termination Date.

        e.      All unpaid fees, costs, expenses, charges and indemnities that have not been disallowed by this Court on the basis of an objection filed by the U.S. Trustee or the Creditors' Committee (or any subsequent trustee of the Debtors' estates) in accordance with the

terms hereof shall constitute Postpetition Obligations and shall be secured by the Postpetition Collateral as specified in this Order.

    7.  <u>Maximum Amount; Borrowings</u>.

      a.  The Debtors shall provide at least three (3) business days' notice of any draws under the Postpetition Facility. Subject to the terms and conditions set forth in this Order, the Debtors may use the proceeds of the Postpetition Facility and the Cash Collateral solely to: (i) pay outstanding Postpetition Obligations as provided in this Order and (ii) fund general operating expenses, including payment of professional fees and capital expeditures, in each case in accordance with the Approved Budget and this Order. The aggregate principal amount of loans available under the Postpetition Facility shall not at any time exceed the amount of $11,500,000 (the "**Maximum Amount**"), without further order of this Court, <u>provided</u>, <u>however</u>, that from and after the entry of this Order and prior to the entry of the Final Order, the Maximum Amount shall be limited to $5,500,000 (the "**Initial Borrowing**").

      b.  Subject to satisfaction of the Conditions Precedent to Funding (as defined below), the loans available under the Postpetition Facility shall be made to the Debtors in two draws,[3] the first of which shall be in the amount of the Initial Borrowing authorized by this Order, the second of which shall be the remainder of the Maximum Amount (the "**Second Borrowing**" and, together with the Initial Borrowing, the "**Borrowings**"), <u>provided</u> that the funding of all advances under the Postpetition Facility shall be made in accordance with and as required to provide the Debtors with adequate liquidity to fund the Approved Budget, and to accomplish the foregoing, the Postpetition Lender may, in its sole discretion, elect to fund advances under the Postpetition Facility in a greater number of draws. In no event shall the aggregate principal amount of loans made under the Postpetition Facility exceed the Maximum

---

[3]  The number of fundings may increase in the discretion of the Postpetition Lender.

Amount.   In the event that the aggregate principal amount of the loans made under the Postpetition Facility exceeds the Maximum Amount, the excess of the the principal amount of the loans made under the Postpetition Facility over the Maximum Amount shall be immediately repaid by the Debtors.   Upon three (3) business days' prior written notice to the Postpetition Lender, the Debtors may prepay all, but not less than all, of the Postpetition Obligations. Notwithstanding anything in this Order to the contrary, once a Postpetition Obligation is paid, repaid, or prepaid (whether pursuant to a mandatory or voluntary prepayment) such amounts shall be deemed indefeasibly repaid and may not be re-borrowed without the Postpetition Lender's written consent, which may be withheld in the Postpetition Lender's sole discretion.

8.    <u>Conditions Precedent to Postpetition Loans</u>.  Advances of the Borrowings under the Postpetition Facility shall be subject to the following conditions precedent, as applicable (collectively, the "**Conditions Precedent to Funding**"), and delivery to the Postpetition Lender of a written certification by the Responsible Officer that such conditions have been satisfied.

a.    <u>Initial Borrowing</u>.  The Postpetition Lender shall not be obligated to make any advances under the Postpetition Facility, or to take, fulfill, or perform any other action hereunder, until the following conditions have been satisfied or provided for in a manner satisfactory to the Postpetition Lender in its sole discretion, or waived in writing by the Postpetition Lender, or if an Event of Default or the Termination Date (as defined in <u>paragraph 34</u>) shall have occurred:

(1)    The use, in full, of all of the Debtors' Cash Collateral such that the Debtors will have no additional Cash Collateral remaining at the time the Initial Borrowing is funded.

(2)    This Order shall have been entered in form and substance acceptable to the Postpetition Lender in its sole discretion, by no later than five (5) days after the Petition Date.

-32-

(3)     The Initial Approved Budget shall have been delivered in form and substance acceptable to the Postpetition Lender in its sole discretion, and the Debtors shall be in compliance therewith in accordance with paragraph 4.c. above.

(4)     There shall have been paid to the Postpetition Lender all fees and all reimbursements of costs or expenses, in each case due and payable under this Order on or before the date on which the Initial Borrowing shall occur.

(5)     Insurance certificates in form and substance satisfactory to the Postpetition Lender demonstrating that the insurance policies required in this Order are in full force and effect.

(6)     The Postpetition Lender shall have received a written representation from the Debtors (in form and substance reasonably acceptable to the Postpetition Lender) that the Debtors, after giving effect to this Order, shall have received all consents and authorizations required pursuant to any material contractual obligation with any other person or entity and shall have obtained all permits of, and effected all notices to and filings with, any governmental authority, in each case, as may be necessary in connection with the consummation of the transactions contemplated in this Order or the Final Order (the "**Required Consents**").

(7)     No pleading or application seeking relief affecting the provision of the Postpetition Facility shall have been filed in the Court by the Debtors.

(8)     The Debtors shall have (i) entered into the Stalking Horse APA on or before the Petition Date and (ii) filed a motion on the Petition Date for (x) approval of the Bidding Procedures (as defined in paragraph 15 below) and (y) approval of the sale transactions contemplated under the Stalking Horse APA.

(9)     In accordance with the provisions of the Prepetition Letter of Credit Agreement, the Prepetition Senior Lender shall have consented to the priming of the Prepetition Senior Priority Liens by the Postpetition Liens, and such consent shall be binding on the Prepetition Senior Lender.

(10)     The Postpetition Lender shall be satisfied with respect to the Debtors' cash management arrangements then in effect and, if requested by the Postpetition Lender, all of the Debtors' deposit and other bank accounts shall be subject to deposit account control agreements acceptable to the Postpetition Lender. The Postpetition Lender shall fund the Postpetition Facility through the ICICI DIP Loan Account.

(11)     The Postpetition Lender shall be satisfied in its reasonable discretion with the "first day motions" and related orders entered in the Chapter 11 Cases.

b.     All Borrowings.   In addition to the other terms of this Order, the Postpetition Lender shall not be obligated to fund any amounts under the Postpetition Facility, if, as of the date thereof:

-33-

(1)     (i) The Court shall not have entered the Final Order, substantially in the form of this Order and otherwise acceptable to the Postpetition Lender in its sole discretion, on or before the date that is 30 days after the Petition Date, (ii) this Order or the Final Order shall have been vacated, stayed, reversed, modified or amended without the Postpetition Lender's consent (to be granted or withheld in the Postpetition Lender's sole discretion) or shall otherwise not be in full force and effect, (iii) a motion for reconsideration of any such order shall have been timely filed or (iv) an appeal of any such order shall have been timely filed and such order in any respect is the subject of a stay pending appeal.

(2)     The advance requested would cause the aggregate outstanding amount of the loans under the Postpetition Facility to exceed the Maximum Amount authorized by this Order or the Final Order, as the case may be, or any order modifying, reversing, staying, vacating or amending such order shall have been entered without the Postpetition Lender's consent, or any appeal of such order shall have been timely filed.

(3)     The Termination Date or any Event of Default shall have occurred.

(4)     The Approved Budget shall not have been delivered in form and substance acceptable to the Postpetition Lender in its sole discretion, or the Debtors shall not be in compliance therewith in accordance with paragraph 4.c. above.

(5)     Any Debtor shall have breached any of its obligations under this Order or the Final Order, as the case may be.

(6)     The Court shall not have entered an order approving the Bidding Procedures in form and substance reasonably acceptable to Postpetition Lender within twenty-five (25) days after the Petition Date, (ii) such order shall have been vacated, stayed, reversed, modified or amended without the Postpetition Lender's consent or shall otherwise not be in full force and effect, (iii) a motion for reconsideration of any such order shall have been timely filed, or (iv) an appeal of any such order shall have been timely filed and such order in any respect is the subject of a stay pending appeal.

(7)     Any motions, orders, pleadings or other related documents shall have been filed by the Debtors in the Chapter 11 Cases in connection with the Postpetition Facility that are not satisfactory to the Postpetition Lender.

(8)     The Debtors shall not have reimbursed the Postpetition Lender for all fees, costs and expenses of the Postpetition Lender, its counsel, financial advisors and accountants owing as of such date pursuant to the terms of this Order and/or the Final Order.

9.     Postpetition Liens.  As security for the full and timely payment of the Postpetition Obligations, the Postpetition Lender is hereby granted, pursuant to sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code, valid, binding, enforceable, unavoidable and fully perfected security interests, liens and mortgages (collectively,

-34-

the "**Postpetition Liens**") in and upon all pre-petition and post-petition real and personal, tangible and intangible property and assets of each of the Debtors of any kind or nature whatsoever, wherever located, whether now existing or hereafter acquired or arising (including assets acquired under the water market capex), including, without limitation, all cash (including all Cash Collateral, wherever held), cash equivalents, bank accounts, accounts, other receivables, chattel paper, contract rights, inventory, instruments, documents, securities (whether or not marketable), equipment, goods, fixtures, real property interests, intellectual property, general intangibles, investment property, supporting obligations, letter of credit rights, commercial tort claims, one hundred percent (100%) of the capital stock of each Debtor's direct and indirect domestic subsidiaries, all inter-company notes held by the Debtors, trademarks, trade names, licenses, rights to payment including tax refund claims, and causes of action (inclusive of actions for preferences, fraudulent conveyances, and other avoidance power claims under sections 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code (the "**Avoidance Actions**")), but, subject to entry of a Final Order, inclusive of any and all proceeds and recoveries from the Avoidance Actions, and the Prepetition Senior Collateral, and the proceeds, products, offspring, rents and profits of all of the foregoing, including insurance proceeds (all of the foregoing, the "**Postpetition Collateral**").

   10. <u>Other Priority Matters</u>.  Subject to the Carve-Out, the Postpetition Liens: (a) shall, pursuant to section 364(c)(2) of the Bankruptcy Code, constitute first priority security interests in and liens on all Postpetition Collateral that is not otherwise subject to any Prior Lien; (b) shall, pursuant to section 364(d)(1) of the Bankruptcy Code, be senior to and prime (i) the Prepetition Senior Priority Liens, and (ii) the Adequate Protection Senior Liens (the liens described in clauses (i) and (ii) above that will be primed, collectively, the "**Primed Liens**"); and

-35-

(c) shall, pursuant to section 364(c)(3) of the Bankruptcy Code, be immediately junior in priority to any and all Prior Liens (other than the Primed Liens) on or in the Postpetition Collateral. Other than the Carve-Out and Prior Liens, the Postpetition Liens shall at all times be senior to, among others, the following (collectively, the "**Subordinate Liens and Related Rights**"): (i) the rights of any Debtor and any successor trustee or estate representative in the Chapter 11 Cases or any other subsequent proceedings under the Bankruptcy Code, including, without limitation, any Chapter 7 proceeding if any of the Chapter 11 Cases are converted to a case under Chapter 7 of the Bankruptcy Code (collectively, the "**Successor Case**"); (ii) any inter-company claim of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor, (iii) any administrative claim asserted by any entity, and (iv) any security interest or lien which is either (x) avoided or otherwise preserved for the benefit of any Debtor's estate under section 551 or any other provision of the Bankruptcy Code, or (y) junior or otherwise subordinate to the Prepetition Senior Priority Liens. The Postpetition Liens shall be deemed legal, valid, binding, enforceable, and perfected liens, not subject to subordination, impairment, re-characterization, or avoidance, for all purposes in the Chapter 11 Cases and any Successor Case. Other than the Carve-Out and Prior Liens, no other liens or security interests, whether for adequate protection or otherwise, shall be senior or equal to or *pari passu* with the Postpetition Liens in these Chapter 11 Cases or any Successor Case without the express written consent of the Postpetition Lender (which consent may be withheld in its sole discretion). Notwithstanding anything herein to the contrary, all parties retain and reserve all their rights to dispute the validity, priority, enforceability and perfection of the Prior Liens.

11.     Super-Priority Claim.     In addition to the Postpetition Liens, the Postpetition Lender is hereby granted, for all Postpetition Obligations, an allowed super-priority

-36-

administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code (the "**Super-Priority Claim**") against each Debtor and its respective estate.  Except for the Carve-Out, the Super-Priority Claims shall have priority over all other costs and expenses of administration of any kind (and no cost or expense of administration shall be senior to, equal to, or pari passu with, the Super-Priority Claim), including those specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 363, 364, 503, 506(c) (subject to the entry of a Final Order), 507, 546, 726, 1113 or 1114 or any other provision of the Bankruptcy Code or otherwise (whether incurred in these Chapter 11 Cases or any Successor Case, whether for adequate protection, the lack of, or failure to provide, adequate protection, or otherwise, including, without limitation, the Adequate Protection Senior Claims).  The Super-Priority Claim shall at all times be senior to the following (collectively, the "**Subordinate Claims and Related Rights**"):  (i) the rights of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor, (ii) the rights of any successor trustee or estate representative in the Chapter 11 Cases or any Successor Case, or (iii) except for the Carve-Out, any claim asserted by any other creditor or party in interest in the Chapter 11 Cases or any Successor Case.

12.      No Reduction or Impairment.  No obligation or liability owed, or payment, transfer or grant of security, to the Postpetition Lender under this Order shall be stayed, restrained, voidable, impaired, re-characterized, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) or 548 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or be subject to any defense, reduction, setoff, recoupment or counterclaim, whether in the Chapter 11 Cases or any Successor

-37-

Case. The Postpetition Obligations, once paid by any Debtor to the Postpetition Lender, shall be non-refundable.

13. Carve-Out.

a. Generally. Notwithstanding anything to the contrary contained in this Order, upon the occurrence of the Carve-Out Trigger Date (as defined below), the liens and claims granted to the Postpetition Lender in this Order shall be subject to the payment, without duplication, of the following fees and claims (collectively, the "**Carve-Out**"), but only to the extent (after application of all retainers) that there are not sufficient funds (other than proceeds of the Postpetition Facility) in the Debtors' estates to pay such amounts at the time payment is required to be made:

(i) with respect to claims incurred prior to the Carve-Out Trigger Date, the claims of (x) professionals of the Debtors whose retention is approved by this Court during the Chapter 11 Cases pursuant to sections 327 and 328 of the Bankruptcy Code (the "**Debtors' Professionals**") for unpaid fees and expenses (after application of all retainers) that were incurred on and after the Petition Date and prior to the Carve-Out Trigger Date in the Chapter 11 Cases; and (y) professionals of any statutory committee appointed in the Chapter 11 Cases (or any subsequent trustee of the Debtors' estates) whose retention is approved by this Court during the Chapter 11 Cases pursuant to section 1103 of the Bankruptcy Code (the "**Committee's Professionals**" and together with the Debtors' Professionals, the "**Retained Professionals**") for unpaid fees and expenses (after application of all retainers) that were incurred on and after the date of appointment of the applicable statutory committee and prior to the Carve-Out Trigger Date in the Chapter 11 Cases; provided that, in each case, such fees and expenses of the Retained Professionals are ultimately allowed on a final basis by this Court under sections 330 and 331 of the Bankruptcy Code and are not excluded from the Carve-Out under paragraph 28 of this Order (such fees and expenses, the "**Pre-Carve-Out Trigger Date Expenses**") and the permitted amount thereof, the "**Pre-Carve-Out Trigger Date Amount**") and, with respect to the liens and claims held or granted to the Postpetition Lender or the Prepetition Senior Lender, must comply with the Approved Budget.

(ii) with respect to claims incurred on or after the Carve-Out Trigger Date, the claims of Retained Professionals for unpaid fees and expenses (after application of all retainers) that were incurred on and after the Carve-Out Trigger Date; provided that, in each case, such fees and expenses of the Retained Professionals are ultimately allowed on a final basis by this Court under sections 330 and 331 of the Bankruptcy Code, are not excluded from the Carve-Out under paragraph 28 of this Order and do not exceed $150,000 in the aggregate for all of the Retained Professionals (such fees and expenses, the "**Post-Carve-Out Trigger Date Expenses**" and the permitted amount thereof, the "**Post-Carve-Out Trigger Date**

-38-

**Amount**" and, together with the Pre-Carve-Out Trigger Date Amount, the "**Carve-Out Amount**"); provided, however, that notwithstanding the foregoing, the Transaction Fee payable to Duff & Phelps pursuant to the Duff & Phelps engagement letter dated as of March 24, 2014 shall be treated as part of the Carve-Out in addition to the Post-Carve Out Trigger Date Amount.

(iii)    unpaid fees payable to the United States Trustee and Clerk of the Bankruptcy Court pursuant to section 1930 of Title 28 of the United States Code.

(iv)    Notwithstanding any other provision of this Order, at the sole discretion of the Postpetition Lender, the Carve-Out and the Post-Carve-Out Trigger Date Expenses may be funded in any other reasonable manner including, without limitation, through a commitment by the Postpetition Lender to fund such expenses directly (whether through the Postpetition Facility or otherwise) and not as a claim senior to any claims held by or liens asserted by the Postpetition Lender (the "**Alternative Carve-Out Payment**"). The Alternative Carve-Out Payment shall be added to and treated hereunder as part of the Postpetition Facility.

b.    Carve-Out Trigger Date. As used herein, the term "**Carve-Out Trigger Date**" means the date on which the Postpetition Lender provides written notice to the Debtors that the Carve-Out is invoked, which notice shall be delivered only on or after the Termination Date.

c.    Carve-Out Trigger Date Amounts. Subject to the terms and conditions of this Order and the Approved Budget, the Debtors shall be permitted, during the time period prior to the Carve-Out Trigger Date, to pay compensation and reimbursement of reasonable fees and expenses of the Retained Professionals allowed and payable under sections 328, 330 and 331 of the Bankruptcy Code, as the same may be due and payable, that constitute Pre-Carve-Out Trigger Date Expenses and such payments shall not reduce or be deemed to reduce the Post-Carve-Out Trigger Date Amount. On and after the Carve-Out Trigger Date, the dollar amounts available to be paid under the Carve-Out Amount shall be reduced, dollar-for-dollar, by the aggregate amount of payments made to the Retained Professionals on account of their Post-Carve-Out Trigger Date Expenses (whether from Cash Collateral, any proceeds of the Postpetition Facility, or otherwise).

d.      <u>Reservation of Rights</u>.  Payment of any fees and expenses of the Retained Professionals pursuant to the Carve-Out shall not, and shall not be deemed to, (i) reduce any Debtor's obligations owed to the Postpetition Lender or the Prepetition Senior Lender, or (ii) subordinate, modify, alter or otherwise affect any of the liens and security interests of such parties in the Postpetition Collateral or Prepetition Senior Collateral (or their respective claims against the Debtors).  The Postpetition Lender and the Prepetition Senior Lender shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Retained Professionals (or of any other Person) incurred in connection with the Chapter 11 Cases or any Successor Case, and nothing in this Order or otherwise shall be construed to obligate the Postpetition Lender and/or Prepetition Senior Lender in any way to pay compensation to or to reimburse expenses of any Retained Professional or any other Person, or to ensure that any Debtor has sufficient funds to pay such compensation or reimbursement. Nothing herein shall impair, or be construed to impair, the ability of any party to object to any of the fees, expenses, reimbursement or compensation of the Retained Professionals.

14.      <u>Cash Collection Procedures</u>.

a.      <u>Generally</u>.  From and after the date of the entry of this Order, all collections and proceeds of any Postpetition Collateral or Prepetition Senior Collateral and all related Cash Collateral, other than SCB Cash Collateral, which shall at any time come into the possession, custody or control of any Debtor, or to which any Debtor is now or shall become entitled at any time, shall be promptly deposited in Account No. 840000001387 maintained with ICICI Bank, New York Branch  (or in such other accounts as are designated by Postpetition Lender from time to time, collectively the "**ICICI DIP Loan Account**"), and such collections and proceeds upon such deposit shall be applied, subject to the Carve-Out and any Prior Liens,

-40-

first, against the Postpetition Obligations and then against Prepetition Senior Obligations as provided in this Order.  The Debtors shall promptly enter into any additional agreements providing for the establishment of lock boxes, blocked accounts, or similar arrangements in favor of the Postpetition Lender for purposes of facilitating cash collections from the Debtors as requested by the Postpetition Lender.  Notwithstanding the foregoing, any SCB Cash Collateral shall be separately deposited into the SCB Cash Collateral Account and held in such account pending further order of this Court.

              b.       <u>Existing Accounts</u>.  The Prepetition Senior Lender shall immediately share dominion and control with the Postpetition Lender with respect to each depository account of the Debtors or other third party that was subject to a deposit account control agreement or similar agreement with or in favor of the Prepetition Senior Lender as of the Petition Date, and such agreements shall hereafter be exclusively enforceable by the Postpetition Lender against, and binding upon, each depository institution party thereto until the Postpetition Obligations have been paid in full in cash and the Postpetition Facility shall have been terminated, after which such agreements shall again be solely enforceable by the Prepetition Senior Lender.

              15.    <u>Non-Ordinary Course Dispositions</u>.  The respective rights of the Postpetition Lender and Prepetition Senior Lender to credit bid all or any portion of the Postpetition Obligations and the Prepetition Senior Obligations (as applicable) under section 363(k) of the Bankruptcy Code and other applicable law in connection with any proposed sale of Postpetition Collateral or Prepetition Senior Collateral (as applicable), or to object to such proposed sale or any other sale, shall be preserved through the closing of such sale or any other sale; <u>provided</u>, <u>however</u>, that in exchange for the rights afforded to the Prepetition Senior Lender

-41-

hereunder, the Prepetition Senior Lender has agreed to support the sale contemplated by the *Debtors' Motion For Entry of (I) an Order (A) Authorizing and Approving Bidding Procedures in Connection with the Sale of Substantially All of the Debtors' Assets, (B) Authorizing and Approving Stalking Horse Protections, (C) Authorizing and Approving Procedures Related to the Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with the Sale Approval Hearing, (E) Approving the Form and Manner of the Notice of the Sale Hearing, and (F) Granting Certain Related Relief, and (II) an Order (A) Approving the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale, and (C) Granting Certain Related Relief,* filed on the Petition Date (the "**Bidding Procedures and Sale Motion**" and the bidding procedures approved thereby, the "**Bidding Procedures**"). Any and all proceeds arising from or in connection with any sale, lease, transfer, or other disposition of Postpetition Collateral or Prepetition Senior Collateral (other than the sale of Inventory in the ordinary course of any Debtor's business), and any tax refund, equity issuances or payment of insurance shall, subject to the terms of this Order, be immediately transferred to the Postpetition Lender for permanent application to the Postpetition Obligations, with any remainder (if any) delivered to the Debtors for subsequent distribution as and when approved by the Court. Any and all assets, and any portion of any assets, acquired or created using the proceeds of the Postpetition Facility, and any and all proceeds arising from or in connection with any sale, lease, transfer or other disposition of any such assets, including in connection with the 363 Sale, shall be exclusively the Postpetition Lender's Postpetition Collateral and shall be subject to the lien in favor of the Postpetition Lender to secure the Postpetition Obligations pursuant to Sections 364 and 503 of the Bankruptcy Code and no other lien, claim or security interest of any kind.

-42-

16.     [Reserved].

17.     Adequate Protection Senior Obligations.  Until the indefeasible repayment in full in cash of the Prepetition Senior Obligations, as adequate protection for the Prepetition Senior Lender's interest in the Prepetition Senior Collateral, the Prepetition Senior Lender is hereby granted the following:

a.     Replacement Liens.  Pursuant to sections 361(2), 362, 363(c)(2), and 363(e) of the Bankruptcy Code, the Prepetition Senior Lender is hereby granted by each Debtor continuing valid, binding, enforceable and perfected, liens and security interests in and on all of the Postpetition Collateral (the "**Adequate Protection Senior Liens**").  The Adequate Protection Senior Liens shall (a) be subordinate only to:  (1) the Carve-Out, (2) the Postpetition Liens, and (3) the Prior Liens; and (b) be senior and superior to the Subordinate Liens and Related Rights.  The Adequate Protection Senior Liens shall be deemed legal, valid, binding, enforceable, and perfected liens, not subject to subordination, impairment, re-characterization, or avoidance, for all purposes in the Chapter 11 Cases and any Successor Case.  Except as described in clause (a) above, no other liens or security interests, whether for adequate protection or otherwise, shall be senior or equal to or pari passu with the Adequate Protection Senior Liens in these Chapter 11 Cases or any Successor Case without the prior written consent of the Prepetition Senior Lender (which consent may be withheld in its sole discretion).

b.     Adequate Protection Senior Claim.  Pursuant to section 507(b) of the Bankruptcy Code, the Prepetition Senior Lender shall have an allowed super-priority administrative expense claim (the "**Adequate Protection Senior Claim**") against each Debtor and its respective estate.  The Adequate Protection Senior Claim shall:  (a) be subordinate only to:  (1) the Carve-Out, (2) the Postpetition Liens, (3) the Prior Liens, and (4) the Super-Priority

-43-

Claim; and (b) be senior and superior to the Subordinate Claims and Related Rights. Except as described in clause (a) above, no cost or expense of administration under any provision of the Bankruptcy Code (whether incurred in these Chapter 11 Cases or any Successor Case, whether for adequate protection, the lack of, or failure to provide, adequate protection, or otherwise), shall be senior to, equal to, or pari passu with, the Adequate Protection Senior Claim.

    c.  Adequate Protection Senior Obligations. The Adequate Protection Senior Liens and Adequate Protection Senior Claim shall secure the payment of the Prepetition Senior Obligations in an amount equal to any diminution in the value of the Prepetition Senior Lender's interests in the Prepetition Senior Collateral from and after the Petition Date (the amount of such diminution, the "**Adequate Protection Senior Obligations**") including, without limitation, any such diminution resulting from the following: (i) the use by the Debtors of the Prepetition Senior Collateral, including, without limitation, the Cash Collateral, (ii) the imposition of the Postpetition Liens, which will prime the Primed Liens, (iii) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code, or (iv) the physical deterioration, consumption, use, sale, lease, disposition, shrinkage, or decline in market value of the Prepetition Senior Collateral or otherwise.

    d.  Waiver of Priming Rights and Use of Cash Collateral. Subject only to the rights granted to the Postpetition Lender or any entity that is an assignee of, or refinances or repays, the Postpetition Facility, the Debtors and their estates (and any party in interest acting on behalf of the Debtors or their estates) shall not assert or exercise any right (i) without the Postpetition Lender's and Prepetition Senior Lender's prior written consent, or (ii) without prior indefeasible payment and satisfaction in full in cash of all of the Postpetition Obligations and Prepetition Senior Obligations: (w) to grant or impose, or request that the Court

-44-

grant or impose, under section 364 of the Bankruptcy Code or otherwise, liens on or security interests in the Postpetition Collateral or Prepetition Senior Collateral that are pari passu with or senior to any of the Postpetition Obligations, Prepetition Senior Obligations, Postpetition Liens or the Prepetition Senior Liens, other than, with respect to the liens and claims of the Prepetition Senior Lender, the liens and claims provided to the Postpetition Lender hereunder (or any assignee of the Postpetition Lender's rights hereunder); (x) to seek the non-consensual use of the Postpetition Lender's or Prepetition Senior Lender's Cash Collateral under section 363 of the Bankruptcy Code; (y) to modify or affect any of the rights of the Postpetition Lender or Prepetition Senior Lender under this Order; or (z) to propose a plan of reorganization or liquidation that would modify or affect any of the rights of the Postpetition Lender or Prepetition Senior Lender under this Order.

           e.        Interest, Paydown and Fees. As further adequate protection, and without limiting any rights of the Prepetition Senior Lender under section 506(b) of the Bankruptcy Code which are hereby preserved, and in consideration, and as a requirement, for obtaining the consent of the Prepetition Senior Lender to the entry of this Order and the Debtors' consensual use of Cash Collateral as provided herein, the Debtors shall, on the entry of this Order and the initial advance of funds under the Postpetition Facility and thereafter, pay any principal, interest, fees and charges as and when due on the Bond Obligations and the Prepetition Senior Obligations (which shall be paid directly by the Postpetition Lender to the Prepetition Senior Lender or holders of the Bonds, as applicable, on the Debtors' behalf), and, from and after the date of the initial advance under the Postpetition Facility and on a monthly basis thereafter, pay or reimburse the Prepetition Senior Lender (i) monthly interest payments due under the Prepetition Senior Obligations at the non-default cash pay interest rate (excluding any paid in

-45-

kind interest), and (ii) for any and all of its accrued and past-due fees, costs, expenses and charges payable under the Prepetition Senior Loan Documents, including without limitation, the reasonable attorneys' and other fees and expenses of the Prepetition Senior Lender as provided in the Prepetition Senior Loan Documents, whether accrued prepetition or to be incurred postpetition, all without further notice, motion or application to, order of, or hearing before, this Court. For avoidance of doubt, the foregoing shall not constitute a waiver of any rights the Prepetition Senior Lender may have under section 506(b) of the Bankruptcy Code to include fees, costs and other charges in the Prepetition Senior Obligations.

18.     Subordination of Prepetition Obligations. Notwithstanding anything in this Order to the contrary, any and all claims and liens of the Postpetition Lender arising with respect to or in connection with this Order (the "**Superior Obligations**"), including, without limitation, the Postpetition Obligations, Postpetition Liens, and Super-Priority Claims, must and shall be indefeasibly paid and satisfied in full in cash and all lending commitments the Postpetition Facility must be terminated before any payment or distribution, whether pursuant to a plan of reorganization, setoff or otherwise, may or can be made to or retained by any of the Prepetition Senior Lender or SCB arising with respect to or in connection with this Order (except with respect to any payments described in paragraph 17(c) of this Order), the Prepetition Senior Loan Documents, and/or the SCB Loan Documents (collectively, the "**Subordinate Obligations**"). Any payment or distribution, whether in cash, securities or other property, which would otherwise, but for the terms hereof, be payable or deliverable to any Prepetition Senior Lender or SCB in respect of or in connection with any Subordinate Obligations shall be (x) paid or delivered directly to the Postpetition Lender (to be held and/or applied by Postpetition Lender in accordance with the terms of this Order) until all Superior Obligations are indefeasibly paid

-46-

and satisfied in full in cash and all commitments to lend under the Postpetition Facility shall have been terminated, and (y) shall be segregated and held in trust and promptly paid over to the Postpetition Lender in the same form as received, with any necessary endorsements. The Postpetition Lender is authorized to make such endorsements as agent for any holder of Subordinate Obligations. Until all Superior Obligations are indefeasibly paid and satisfied in full in cash and all commitments to lend under the Postpetition Facility shall have been terminated, the Postpetition Lender shall not have any obligation of, and the holders of Subordinate Obligations waive any requirement regarding, and shall not be entitled to demand, request, plead or otherwise claim the benefit of, any marshalling, appraisal, valuation or other similar right that may otherwise be available under applicable law in connection with the Postpetition Collateral.

19.     Waiver of Section 506(c) Claims. Subject to entry of the Final Order, no costs or expenses of administration or other charge, lien, assessment or claim incurred on or after the Petition Date of any Person or entity shall be imposed against the Postpetition Lender, its claims or the Postpetition Collateral under section 506(c) of the Bankruptcy Code or otherwise, and the Debtors hereby irrevocably waive any and all such rights, remedies and benefits under section 506(c) of the Bankruptcy Code as to the Postpetition Lender, its claims or the Postpetition Collateral. Subject to entry of the Final Order, no costs or expenses of administration or other charge, lien, assessment or claim incurred on or after the Petition Date of any Person or entity shall be imposed against the Prepetition Senior Lender, their respective claims or the Prepetition Senior Collateral under section 506(c) of the Bankruptcy Code or otherwise, and the Debtors hereby irrevocably waive any and all such rights, remedies and benefits under section 506(c) of the Bankruptcy Code as to the Prepetition Senior Lender, their respective claims or the Prepetition Senior Collateral.

-47-

20.     Other Waivers.  Except for the Carve-Out and Prior Liens, no claim or lien having a priority superior to or pari passu with those granted pursuant to this Order to the Postpetition Lender or to the Prepetition Senior Lender, respectively, shall be granted or allowed while any portion of the Postpetition Obligations, the Postpetition Facility (or any refinancing thereof or commitment to provide loans thereunder), or the Adequate Protection Senior Obligations remain outstanding.  The Debtors shall not grant mortgages, security interests, or liens in the Postpetition Collateral to any parties other than the Postpetition Lender pursuant to section 364(d) of the Bankruptcy Code or otherwise.

21.     Automatic Perfection.

a.      The Postpetition Liens and the Adequate Protection Senior Liens shall not be subject to challenge and shall attach and become valid, perfected, enforceable, non-avoidable and effective by operation of law as of the Petition Date without any further notice, act or action of or by any Person or entity, and without the necessity of execution by the Debtors, or the filing or recordation, of any financing statements, security agreements, vehicle lien applications, mortgages, filings with the U.S. Patent and Trademark Office, or other documents. If the Postpetition Lender or the Prepetition Senior Lender hereafter request that the Debtors execute and deliver to it any financing statements, security agreements, collateral assignments, mortgages, or other instruments and documents considered by such party to be reasonably necessary or desirable to further evidence the perfection of the liens and security interests provided under this Order, then the Debtors are hereby authorized and directed, at their sole cost and expense, to promptly execute and deliver such financing statements, security agreements, mortgages, collateral assignments, instruments, and documents, and the Postpetition Lender and the Prepetition Senior Lender (as applicable) are hereby authorized to file or record such

-48-

documents in their respective discretion, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Order, but with the priorities as set forth herein. The Postpetition Lender or the Prepetition Senior Lender may (in their respective sole discretion), but shall not be required to, file a certified copy of this Order in any filing or recording office in any state, county or other jurisdiction in which any Debtor has real or personal property and such filing or recording shall be accepted and shall constitute sufficient evidence of perfection of such applicable parties' interests in the Postpetition Collateral at the time and on the date of entry of this Order, but with the priorities as set forth herein.

    b.  Notwithstanding anything in this Order to the contrary, (i) no holder of a claim shall request or file such financing statements, mortgages, notices of lien or similar instruments, or otherwise confirm the perfection of such security interests and liens granted in this Order, unless the Postpetition Lender shall theretofore have done so or consented thereto and (ii) SCB shall not request or file such financing statements, mortgages, notices of lien or similar instruments, or otherwise confirm the perfection of such security interests and liens granted in this Order, unless the Prepetition Senior Lender shall theretofore have done so or consented thereto.

    c.  To the extent that any applicable non-bankruptcy law would otherwise restrict the grant, scope, enforceability, attachment or perfection of the security interests and liens authorized or created under or in connection with this Order, or otherwise would impose filing or registration requirements or fees and charges with respect thereto, such law is hereby pre-empted to the maximum extent permitted by the United States Constitution, the Bankruptcy Code, applicable federal law, and the judicial power of the United States Bankruptcy

-49-

Court; provided that the Postpetition Lender, the Prepetition Senior Lender or SCB may still take such steps as they wish to perfect their respective security interests and liens under otherwise applicable state law without waiving the benefits of this provision of this Order.

22. <u>Default Under Other Documents</u>. The Postpetition Lender shall have all rights and remedies with respect to the Debtors and any other rights, remedies, benefits and privileges as are set forth in this Order. Except as otherwise expressly provided herein, notwithstanding anything to the contrary contained in any prepetition or post-petition agreement, contract, document, note or instrument to which any Debtor is a party or under which any Debtor is obligated or bound, any provision that restricts, conditions, prohibits, limits or impairs in any way any Debtor from granting the Postpetition Lender the post-petition security interests or liens upon any of its assets, properties or other Postpetition Collateral or otherwise entering into and complying with all of the terms, conditions and provisions of this Order shall be unenforceable against such Debtor, and therefore, shall not adversely affect the validity, priority, perfection or enforceability of the liens, security interests, claims, rights, priorities and/or protections granted to the Postpetition Lender pursuant to this Order.

23. <u>Successors and Assigns</u>. The provisions of this Order shall, as applicable, be binding upon and inure to the benefit of the Postpetition Lender, the Prepetition Senior Lender, and the Debtors and their respective estates, and their respective successors and assigns, including, without limitation, any trustee or other fiduciary hereafter appointed as a legal representative of any of the Debtors or their estates, whether in these Chapter 11 Cases or any Successor Case.

24. <u>Survival</u>. The provisions of this Order and any actions taken pursuant thereto: (a) shall survive the entry of any order (i) converting any of the Chapter 11 Cases to a

-50-

case under chapter 7 of the Bankruptcy Code, (ii) substantively consolidating any of the Debtors or their respective estates, (iii) dismissing or closing any of the Chapter 11 Cases, or (iv) confirming any plan in any of the Chapter 11 Cases; and (b) shall continue in full force and effect notwithstanding the entry of any such order.

25.    Section 364(e); Effect of Modification or Appeal. Based on the findings set forth in this Order, in consideration for the financing provided under Postpetition Facility, the Postpetition Lender is entitled to, and hereby is granted, the full rights, benefits, privileges and protections of, and provided by, section 364(e) of the Bankruptcy Code with respect to the Postpetition Obligations (and related liens, claims, rights, remedies and benefits) created or authorized by this Order in the event that this Order or any authorization or approval contained herein is subsequently stayed, vacated, reversed, amended or modified on appeal. Any subsequent stay, modification, reversal, amendment or vacation of this Order shall not alter, modify or affect the validity, priority, perfection or enforceability of any claim, lien, or security interest of the Postpetition Lender or the Prepetition Senior Lender authorized, created or granted pursuant to this Order and outstanding immediately prior to the actual receipt of written notice by the Postpetition Lender and Prepetition Agents of the effective date of such stay, modification, reversal, amendment or vacation. Notwithstanding any such stay, modification, reversal, amendment or vacation or the exercise of any rights and remedies with respect thereto, all obligations and other financial accommodations made pursuant to this Order, all Postpetition Obligations incurred and uses of Cash Collateral permitted by the Debtors pursuant hereto prior to the actual receipt of written notice by the Postpetition Lender or the Prepetition Senior Lender, as applicable, of the effective date of such stay, modification, reversal, amendment or vacation, shall be governed in all respects by the original provisions of this Order and the Postpetition

-51-

Lender and the Prepetition Senior Lender shall be entitled to all of the rights, privileges, remedies, protections and benefits contained or granted herein or in section 364(e) of the Bankruptcy Code and this Order (as applicable), including, without limitation, the Postpetition Liens, Super-Priority Claims, Adequate Protection Senior Liens, and Adequate Protection Senior Claims.

26.   Modification of Automatic Stay; Other Remedies.

a.   Subject to sub-paragraph c. below, the automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted and vacated as to the Postpetition Lender to the extent necessary to permit it to perform in accordance with, provide any notice under, and exercise, enjoy and enforce its rights, benefits, privileges and remedies pursuant to this Order, in each case without further notice, motion or application to, order of, or hearing before, this Court. Subject to sub-paragraph c. below, regardless of any change in circumstances (whether or not foreseeable), neither section 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be utilized to prohibit the Postpetition Lender's exercise, enjoyment and enforcement of any of such rights, benefits, privileges and remedies as and to the extent provided in this Order.

b.   Subject to sub-paragraph c. below, the Postpetition Lender is hereby authorized and granted leave from the automatic stay under section 362 of the Bankruptcy Code to do the following on and after the Termination Date, in each case without further notice, motion or application to, order of, or hearing before, this Court:

(i)   terminate any obligation of Postpetition Lender to make loans or other extensions of credit under this Order;

(ii)   declare all Postpetition Obligations immediately due and payable in full in cash;

-52-

(iii)    revoke its consent to, and terminate the Debtors' right, if any, under this Order to, use Cash Collateral; and

(iv)    receive and apply proceeds of Postpetition Collateral to the Postpetition Obligations in accordance with the terms and conditions of this Order.

c.    On and after the Termination Date, and subject only to the provisions of the last two sentences of this sub-paragraph c., the Postpetition Lender shall be entitled to foreclose or otherwise enforce its liens on any or all of the Real Estate Assets and/or to exercise any other default-related rights and remedies under this Order or applicable law to the extent not already permitted pursuant to sub-paragraph b. above.  The parties shall use their best efforts to schedule and attend an expedited Court hearing within five (5) days of notice of the Termination Date being given to the Debtors.  The Debtors acknowledge and agree, and this Court hereby orders, that the only issue to be determined and decided at any Court hearing regarding such matters is whether the Termination Date has occurred in accordance with the terms hereof, and notice of such hearing need only be given to the Debtors, any statutory committee of unsecured creditors (and any subsequent trustee of the Debtors' estates) and the U.S. Trustee.

27.    No Waiver of Rights.

a.    Generally.    Without limiting the terms and conditions of paragraphs 9 through 12  and 19 of this Order, neither of the Postpetition Lender or the Prepetition Senior Lender waives, and each expressly reserves, any and all claims, causes of action, defenses, rights and remedies it has or may have pursuant to this Order and the Prepetition Senior Loan Documents, any inter-creditor or subordination agreement, the Bankruptcy Code and/or under applicable law against or with respect to any Debtor and any other Person or entity.

b.    [Reserved]

-53-

c.    <u>Additional Rights Preserved</u>.  Without limiting the generality of this <u>paragraph 28</u>, the Postpetition Lender and the Prepetition Senior Lender may, as applicable, petition this Court for any such additional protection they may reasonably require with respect to the Postpetition Obligations, the Prepetition Senior Obligations, or otherwise, including, without limitation, their rights to request additional adequate protection of their interests in the Prepetition Senior Collateral.  Except as otherwise set forth herein, entry of this Order shall not in any way constitute agreement, consent, or acquiescence by the Postpetition Lender or the Prepetition Senior Lender to the terms of any plan of reorganization filed in the Chapter 11 Cases.

28.    <u>Restriction on Use of Lenders' Funds</u>.  No portion of the Postpetition Facility, the Postpetition Collateral, the Prepetition Senior Collateral, the Cash Collateral, or the Carve-Out, and no disbursements set forth in the Approved Budget, shall be used for the payment of professional fees, disbursements, costs or expenses incurred in connection with asserting any claims, actions or causes of action against or adverse to the interests of the Postpetition Lender or the Prepetition Senior Lender, including, without limitation, any action challenging or raising any defenses to the Postpetition Obligations, the Prepetition Senior Obligations, the Postpetition Liens, or the Prepetition Senior Liens; <u>provided</u> that no more than $25,000 in the aggregate of the proceeds of the Postpetition Facility or the Postpetition Collateral (including the Cash Collateral) may be used by the Creditors' Committee (and any subsequent trustee of the Debtors' estates) to investigate the Prepetition Senior Obligations or the Prepetition Senior Liens, take any discovery or other action in furtherance of any claims against or objection to the assertion of claims by the Petition Senior Lender or assert any claims against or objections

-54-

to the Prepetition Senior Lender or the Prepetition Senior Liens, including those actions described in paragraph 29, below.

29.     Release of Claims Against Prepetition Senior Lender.

a.     Generally.    The stipulations and admissions contained in paragraph D of this Order shall be irrevocable and binding on all parties in interest, including, without limitation, the Creditors' Committee (and any subsequent trustee of the Debtors' estates), unless, and solely to the extent that, (a) the Creditors' Committee having established standing (or any subsequent trustee of the Debtors' estates so long as such trustee is appointed and acts prior to the Complaint Filing Deadline (as defined below in this paragraph)), or another party in interest that has established standing and requisite authority, has timely filed a complaint and commenced an adversary proceeding (subject to the limitations set forth in paragraph 28 of this Order) challenging the amount, validity, or enforceability of the Prepetition Senior Obligations, or the perfection or priority of the Prepetition Senior Liens, or otherwise asserting any claims or causes of action on behalf of the Debtors' estates against the Prepetition Senior Lender relating to the Prepetition Senior Obligations, no later than the earlier of (x) sixty (60) days after the date of appointment of the Creditors' Committee or (y) seventy-five (75) days after the Petition Date (such earlier date, the "**Complaint Filing Deadline**"), and (b) this Court rules in favor of the plaintiff in any such timely and properly commenced adversary proceeding. If no such adversary proceeding is timely and properly commenced by the Complaint Filing Deadline, or to the extent such adversary proceeding does not result in a final and non-appealable order of this Court that is inconsistent with the acknowledgments of the Debtors contained in paragraph D of this Order, then, without the requirement or need to file any proof of claim with respect thereto and without further notice, motion or application to, order of, or hearing before, this

-55-

Court, but in all cases subject to paragraph 27 of this Order, the acknowledgments of the Debtors contained in paragraph D of this Order shall be binding, conclusive and final on the Creditors' Committee (and any subsequent trustee of the Debtors' estates) and any other Person, entity or party-in-interest in the Chapter 11 Cases and any Successor Case and (i) all of the claims, liens and security interests of the Prepetition Senior Lender shall be deemed to be finally allowed for all purposes in these Chapter 11 Cases and any Successor Case and shall not be subject to challenge by any party in interest as to validity, priority, voidability or otherwise, and (ii) the Debtors and their estates shall be deemed to have forever released any and all claims or causes of action against the Prepetition Senior Lender with respect to the Prepetition Senior Loan Documents or any related transactions; provided that the Debtors and all other parties in interest reserve all of their respective rights as to the value of the Prepetition Senior Collateral and may seek and obtain at any time before or after the Complaint Filing Deadline a determination of this Court (x) under section 506(a) of the Bankruptcy Code that all or any portion of the Prepetition Senior Obligations constitute unsecured deficiency claims and (y) regarding the amount, if any, of the Adequate Protection Senior Obligations. Notwithstanding anything to the contrary herein, if any such adversary proceeding is timely commenced, the stipulations contained in paragraph D hereof shall nonetheless remain binding on all parties in interest and preclusive (as provided in the second sentence of this paragraph 29) except to the extent that such stipulations are expressly challenged in such adversary proceeding. In the event a chapter 7 trustee is appointed before the expiration of the Complaint Filing Deadline, such trustee shall have until the longer of (i) the Complaint Filing Deadline or (ii) 14 days after the date of his appointment to take the actions described in this paragraph, in each case unless otherwise ordered by this court.

b.  Prepetition Senior Loan.  Notwithstanding anything herein to the contrary, neither the Postpetition Lender, nor any of its respective affiliates, directors, officers, agents or other Representatives shall be responsible for the direct payment or reimbursement of any amounts owed to the Prepetition Senior Lender, all of which shall be the sole and exclusive obligation and responsibility of the Debtors, (ii) nothing herein shall modify, limit or otherwise impair the rights of the Postpetition Lender, or any of its respective affiliates, directors, officers, agents or other Representatives to take or otherwise pursue any rights or exercise any remedies in accordance with this Order or the Final Order, and (iii) the outcome of any challenge to the liens, claims or interests of the Prepetition Senior Lender or any other Person shall not impair, affect or diminish the Postpetition Obligations, the Postpetition Liens, the Super-Priority Claims, or any other rights, benefits or privileges afforded to the Postpetition Lender under this Order or the Final Order.  The Postpetition Lender shall not challenge any of the Debtors' stipulations concerning the extent, validity, non-avoidability and priority of the Prepetition Senior Obligations or the perfection or priority of the Prepetition Senior Liens.

30.  No Liability to Third Parties; Release of Postpetition Lender; No Marshalling; No Discharge.

a.  In making decisions to advance loans to the Debtors, in administering any loans, in permitting the Debtors to use Cash Collateral, in approving any budget or in taking any actions permitted by this Order, the Postpetition Lender and the Prepetition Senior Lender shall not (i) subject to entry of a Final Order, be deemed to be in control of the operations of any Debtor or to be acting as a "controlling person," "responsible person" or "owner or operator" with respect to the operation or management of any Debtor, and/or (ii) owe any fiduciary duty to any Debtor, its respective creditors or its respective estate,

-57-

and their relationship with each Debtor shall not constitute or be deemed to constitute a joint venture or partnership with such Debtor.

> b.    The Postpetition Lender shall not be subject to the equitable doctrine of "marshaling", "election of remedies" or any other similar doctrine, or, subject to entry of a Final Order, an "equities of the case" claim under section 552(b) of the Bankruptcy Code, in each case with respect to any of its interest in the Postpetition Collateral.

> c.    Subject to the provisions of paragraph 29(a), the Debtors hereby acknowledge effective upon entry of this Order, that the Debtors and their affiliates and subsidiaries (if any) have no defense, counterclaim, offset, recoupment, cross-complaint, claim or demand of any kind or nature whatsoever that can be asserted to reduce or eliminate all or any part of the Debtors' or their affiliates' or subsidiaries' liability, as applicable, to repay the Postpetition Lender in full in cash as provided in this Order or to seek affirmative relief or damages of any kind or nature from the Postpetition Lender, or any of their respective affiliates or subsidiaries.  The Debtors, each in its own right and with respect to the Debtors, on behalf of their bankruptcy estates, and on behalf of all their respective successors, assigns, subsidiaries and affiliates and any Person acting for and on behalf of, or claiming through them, whether directly or derivatively (collectively, the "**Releasing Parties**"), hereby fully, finally and forever release and discharge the Postpetition Lender, and all of its respective past and present officers, directors, servants, agents, attorneys, Representatives, successors, assigns, heirs, parents, subsidiaries, affiliates, and each Person acting for or on behalf of any of them (collectively, the "**Released Parties**") of and from any and all past and present actions, causes of action, demands, suits, claims, liabilities, liens, lawsuits, adverse consequences, amounts paid in settlement, costs, damages, debts, deficiencies, diminution in value, disbursements, expenses, losses and other

obligations of any kind or nature whatsoever, whether in law, equity or otherwise (including, without limitation, those arising under Chapter 5 of the Bankruptcy Code and interest or other carrying costs, penalties, legal, accounting and other professional fees and expenses, and incidental, consequential and punitive damages payable to third parties), whether known or unknown, fixed or contingent, direct, indirect, or derivative, asserted or unasserted, foreseen or unforeseen, suspected or unsuspected, now existing, heretofore existing or which may heretofore accrue against any of the Released Parties, whether held in a personal or representative capacity, and which are based on any act, fact, event or omission or other matter, cause or thing occurring at or from any time prior to and including the date hereof in any way, directly or indirectly arising out of, connected with or relating to their prior dealings, the Postpetition Facility, this Order, the Final Order and the transactions contemplated hereby, and all other agreements, certificates, instruments and other documents and statements (whether written or oral) related to any of the foregoing.

                d.        The Postpetition Obligations shall not be discharged by the entry of an order confirming a plan of reorganization in any Chapter 11 Case (and the Debtors hereby waive any such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code). The Super-Priority Claims and the Postpetition Liens granted to the Postpetition Lender pursuant to this Order shall not be affected in any manner by the entry of an order confirming a plan of reorganization in any Chapter 11 Case.

                31.        <u>Plan of Reorganization or Liquidation</u>. No plan of reorganization or liquidation may be confirmed in these Chapter 11 Cases unless, in connection and concurrently with the effective date of such plan, the plan provides for the indefeasible payment in full, in

cash, and in complete satisfaction of the Postpetition Obligations, and the loan commitments under this Order are terminated on or before the effective date of such plan.

32.    Insurance.

a.    The Debtors shall list the Postpetition Lender as loss payee and additional insured under the Debtors' insurance policies and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies in accordance with the terms and conditions of this Order.

b.    The Borrowers shall cause to be carried and maintained commercial reasonable insurance against risks customarily insured against by comparable companies in the Borrowers' line of business and reasonable acceptable to the Postpetition Lender, including insurance covering all risks of physical loss or damage to the Postpetition Collateral in an amount not less than the full replacement cost of the Postpetition Collateral, provided that such insurance may be subject to standard exceptions and deductibles. Upon the Postpetition Lender's request, the Borrowers shall deliver certificates of insurance evidencing compliance herewith, which certificates shall state that the Postpetition Lender is an additional insured and loss payee for such insurance.

c.    Until the Postpetition Facility and related obligations are indefeasibly paid and satisfied in full in cash and all commitments to lend under the Postpetition Facility shall have been terminated, the Postpetition Lender shall have reasonable consent rights with respect to any settlement for any losses covered by an insurance policy covering the Postpetition Collateral, and to approve an award granted in a condemnation or similar proceeding (or a deed in lieu of condemnation) affecting the Postpetition Collateral, and all proceeds of such policy, award, or deed will be applied in accordance the priorities described herein.

-60-

33.    <u>Final Hearing; Procedure for Objections to and Entry of Final Order</u>. The

Motion is set for a Final Hearing before this Court at 11 '.00 A .M. prevailing Eastern Time

on ~~June~~ July 14, 2014, at which time any party in interest may present any timely filed objections to

the entry of the Final Order, which order shall be in form and substance acceptable to the

Postpetition Lender in its sole discretion. The Debtors shall, in accordance with the Bankruptcy

Code, Bankruptcy Rules and Local Bankruptcy Rules of this Court, promptly serve a notice of

the Final Hearing and entry of this Order, together with a copy of this Order, by electronic mail,

facsimile, hand delivery or overnight delivery to the Notice Parties and Creditors' Committee

(once appointed) or its counsel. Such notice shall state that objections to the entry of the Final

Order shall be in writing and shall be filed with the United States Bankruptcy Court for the

District of Delaware by no later than ~~4:00~~ 5:00 P.M. (prevailing Eastern time) on ~~June 12~~ July 9, 2014 (the

"<u>**Objection Deadline**</u>"), which objections shall be served so that the same are actually received

by the Objection Deadline by: (i) John Knight, Richards, Layton & Finger, P.A., 920 North

King Street, Wilmington, DE 19801, fax (302-651-7701), knight@rlf.com, (ii) Robert A.

Klyman, Gibson, Dunn & Crutcher LLP, 333 S. Grand Ave, Los Angeles, CA 90071-3197, fax

(213-229-7520), rklyman@gibsondunn.com, and Michael Nestor, Young Conaway Stargatt &

Taylor LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, fax (302-

571-1253), mnestor@ycst.com (counsel to the Postpetition Lender and Prepetition Senior

Lender); (iii) SCB; (iv) the MBFC; and (v) the office of the United States Trustee. Any

objections by creditors or other parties-in-interest to any of the provisions of the Final Order may

be waived and barred unless timely filed and served in accordance with this paragraph.

-61-

34.    Termination of Postpetition Facility and Use of Cash Collateral.

a.    During the budget period covered by the Initial Approved Budget, (i) the Debtors' authorization to obtain loans hereunder and/or to use Cash Collateral, and any obligation of the Postpetition Lender to provide loans under the Postpetition Facility, shall immediately and automatically terminate (except as the Postpetition Lender may otherwise agree in writing), and (ii) all Postpetition Obligations shall be immediately due and payable in cash (except as Postpetition Lender may otherwise agree in writing) upon the earliest to occur of any of the following events of default ("**Events of Default**", and such earliest date, the "**Termination Date**"):

(1)    five (5) days following the Petition Date if this Order has not been entered by the Court by such date, or such order has been stayed, reversed, vacated or modified;

(2)    thirty (30) days following the Petition Date, unless the Court has entered the Final Order by such date, or such order has been stayed, reversed, vacated or modified;

(3)    the termination by the Debtors or by the Purchaser of the Stalking Horse APA (including their mutual consent to terminate the Stalking Horse APA);

(4)    any of the Debtors shall have failed to meet any of the Milestones;

(5)    breach by any of the Debtors of any terms or conditions of this Order, including but not limited to (i) those terms and conditions specified in this Order regarding compliance with any Approved Budget and (ii) payment of the Postpetition Obligations when due, and, in each case, such breach continues in effect for two (2) business days after such breach;

(6)    any of the Debtors shall (i) assert that any of the terms or conditions of this Order are not valid and binding or (ii) breach any provision of this Order, the Final Order, the Sale Procedures Order or the 363 Order;

(7)    the reversal, vacation, modification, alteration, amendment or stay of this Order or the Final Order;

(8)    entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, or any of the Debtors apply for, consent to, or acquiesce in, any such conversion;

(9)    the dismissal of any of the Chapter 11 Cases, or any of the Debtors apply for, consent to, or acquiesce in, any such dismissal;

(10)    entry of an order appointing a trustee pursuant to section 1104 of the Bankruptcy Code, or any of the Debtors apply for, consent to, or acquiesce in, any such appointment;

(11)    entry of an order appointing an examiner pursuant to section 1104(b) of the Bankruptcy Code with powers beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code, or any of the Debtors apply for, consent to, or acquiesce in, any such appointment;

(12)    this Court or any other court of competent jurisdiction enters an order or judgment, or any of the Debtors apply for, consent to, or acquiesce in, the entry of such order or judgment, in any of the Chapter 11 Cases modifying, limiting, subordinating, recharacterizing, or avoiding (i) the priority of any Postpetition Obligations or (ii) the perfection, priority or validity of the Postpetition Liens;

(13)    the entry by the Court of an order or orders granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code to any entity or entities, other than the Postpetition Lender, to exercise remedies with respect to any portion of the Postpetition Collateral having a value, individually or in the aggregate, of in excess of $50,000;

(14)    any motion or application is filed by or on behalf of any Debtor seeking the entry of an order, or an order is entered in any of the Chapter 11 Cases, approving any subsequent debtor-in-possession facility for borrowed money or other extensions of credit that does not expressly require the indefeasible payment in full in cash of the Postpetition Obligations;

(15)    any motion or application is filed seeking to sell assets that are Collateral without providing for indefeasible payment in full in cash of the Postpetition Obligations;

(16)    other than with respect to the Carve-Out, any motion or pleading is filed by any of the Debtors seeking to grant, or the entry of any order granting, to any party, (i) any lien senior or equal to the liens described in this Order that are held by the Postpetition Lender in the Postpetition Collateral, or (ii) any claim or expense senior or equal to the claims and expenses described in this Order that are held by the Postpetition Lender against any of the Debtors;

(17)    the payment of, or application for authority to pay, any prepetition claim without consent of the Postpetition Lender, unless permitted under first day orders acceptable to the Postpetition Lender or included in the Approved Budget;

-63-

(18)    the assertion of any claim by any of the Debtors or any statutory committee in any of the Chapter 11 Cases, or the entry of any order approving a claim by any person or entity (in each case whether under Section 506(c) of the Bankruptcy Code or otherwise) against the Postpetition Lender or the obligations under or Postpetition Collateral pledged to secure the Postpetition Facility; provided, however, that the application of this subparagraph to any claim under Section 506(c) of the Bankruptcy Code shall be subject to entry of a Final Order.

(19)    the commencement of any suit, claim, litigation, adversary action, or other proceeding by any Debtor or any statutory committee appointed in the Chapter 11 Cases against the Postpetition Lender or the Prepetition Senior Lender, or any of their respective affiliates, directors, officers, agents or other Representatives;

(20)    the occurrence of the Maturity Date (as defined in paragraph 34.b below);

(21)    any principal draw under the Prepetition Letter of Credit;

(22)    any event of default under the Prepetition Senior Loan Documents other than the commencement of the Chapter 11 Cases.

(23)    the filing of any plan of reorganization or related disclosure statement  or any direct or indirect amendment to such plan or disclosure statement, or the entry of an order confirming any such plan of reorganization or approving any such disclosure statement or approving any such amendment, in each case that either fails to provide for indefeasible payment in full in cash of the Postpetition Facility or treats the claims of the Postpetition Lender in any manner to which it does not consent in its sole discretion;

(24)    the Court shall enter an order that results in any termination or modification of the exclusivity periods set forth in Section 1121 of the Bankruptcy Code except as provided in this Order or in the Final Order;

(25)    the Court shall enter an order (i) resulting in the marshalling of all or any portion of the Postpetition Collateral or (ii) precluding the attachment of liens to post-petition property based on the "equities of the case" under Section 552(b) of the Bankruptcy Code;

(26)    after entry thereof, either of the Sale Procedures Order or the 363 Order shall cease to be in full force and effect, shall have been reversed, stayed, vacated or subject to stay pending appeal or shall have been modified or amended without the prior written consent of the Postpetition Lender in its sole discretion; or

(27)    the Court shall enter an order allowing a sale of all or substantially all of the Debtors' assets pursuant to Section 363(b) of the Bankruptcy Code that does not provide for the indefeasible payment in full of the Postpetition Obligations without the written consent of the Postpetition Lender in its sole discretion.

-64-

No notice or action contemplated in this Order shall require prior application to or authorization of the Court before such notice may be given or such action may be taken, except with respect to the exercise of remedies as expressly provided in paragraph 26.c. above.

b.      Unless the Postpetition Obligations are already due and payable, and notwithstanding anything to the contrary contained in this Order, all Postpetition Obligations shall be immediately due and payable (and the Postpetition Lender shall be entitled to immediate payment of such Postpetition Obligations without further application to or order of the Court) in cash upon the earlier to occur of (i) September 30, 2014 (the "**Maturity Date**"), (ii) the Termination Date, or (iii) the consummation of any plan, sale or other transfer or disposition of all, or any material portion, of the assets or equity interests of the Debtors.

c.      Notwithstanding anything in this order to the contrary, the Debtors cannot make any draws under the Postpetition Facility after August 31, 2014.

35.     Assignment of Rights.  The Debtors acknowledge and understand that the Postpetition Lender may sell and assign all or part of its interest hereunder.  After such assignment, the term "Postpetition Lender" shall mean and include such assignee, and such assignee shall be vested with all rights, powers, benefits and remedies of the Postpetition Lender hereunder with respect to the interest so assigned; provided, however, that with respect to any such interest not so transferred, the Postpetition Lender shall retain all rights, powers, benefits and remedies hereby given.  No such assignment by the Postpetition Lender shall relieve the Debtors of any of their obligations hereunder.

36.     No Third Party Beneficiaries.  No provisions of this Order are intended, nor will be interpreted, to provide or create any third-party beneficiary rights or any other rights

of any kind in any person other than the Postpetition Lender, the Prepetition Senior Lender, and the Debtors (as applicable).

37.    <u>Proofs of Claim</u>.    The Prepetition Senior Lender and the Postpetition Lender shall not be required to file proofs of claim evidencing the Postpetition Obligations or the Prepetition Senior Obligations or the Prepetition Senior Lender's Adequate Protection, as applicable, in the Chapter 11 Cases.

38.    <u>Retention of Jurisdiction; Dismissal</u>.    The Court has and will retain jurisdiction to enforce this Order according to its terms and such retention shall survive notwithstanding any dismissal of the Chapter 11 Cases.   If any order dismissing any of the Chapter 11 Cases (under section 1112 of the Bankruptcy Code or otherwise) is at any time entered, such order shall have no effect on the claims, liens, and Adequate Protection provided for in this Order until the all Postpetition Obligations have been indefeasibly paid in full.

Dated: June 17, 2014.

_____
UNITED STATES BANKRUPTCY JUDGE

-66-